PHELPS (DAY v.). See Case No. 3,689.

PHELPS v. DUDLEY. See Case No. 11,080.

PHELPS v. FARRINGTON. See Case No. 11,077.

PHELPS (GOODYEAR v.). See Case No. 5,-581.

PHELPS (INDIA RUBBER COMB CO. v.). See Case No. 7,025.

---

## Case No. 11,076.

### PHELPS v. LEWISTON.

[15 Blatchf. 131.] [1]

Circuit Court, N. D. New York. Aug. 17, 1878.

MUNICIPAL CORPORATIONS—VALIDITY OF BONDS—BONA FIDE PURCHASERS—AFFIDAVIT OF ASSESSORS AS TO CONSENT OF TAXPAYERS—"LAST ASSESSMENT ROLL"—"SITUATE ALONG THE ROUTE"—DEMAND—INTEREST.

1. Bonds issued by the town of Lewiston, in the county of Niagara, in aid of the construction of the Lake Ontario Shore Railroad, under the acts of the legislature of New York, passed May 11th, 1868, and April 19th, 1869 (Laws 1868, c. 811, and Laws 1869, c. 241), held valid in the hands of a bona fide purchaser for value, without notice, before maturity.

2. The plaintiff bought the bonds in September, 1874. Certiorari proceedings in the supreme court of New York, respecting the bonds, which took place in 1872 and 1873, held not to affect the rights of the plaintiff, for the reasons set forth in the decision of the court of appeals of New York, in People v. Walter, 68 N. Y. 403, respecting such proceedings.

3. Various offers of proof held to be irrelevant, when made by the defendant, on the trial of a suit by such plaintiff against said town, to recover the amounts of coupons on said bonds, on the ground that the plaintiff was a bona fide holder of the bonds.

4. Under the 2d section of said act of 1868, as amended by the 2d section of said act of 1869, the affidavit of the assessors in this case was held to be conclusive proof that the required consent of tax payers had been obtained before the bonds were issued, as respected the plaintiff, as a bona fide holder of the bonds, for a valuable consideration, without notice.

[Followed in Irwin v. Town of Ontario, 3 Fed. 49, 57.]

5. Such affidavit having been attached to the consent papers when the two were filed together in the office of the county clerk, it was held, in view of that fact, and of the contents of the affidavit and of the consents, that the affidavit was sufficient, although it did not state on its face what the consent was to, or for, or about.

[Cited in Smith v. Ontario, Case No. 13,086. Followed in Irwin v. Town of Ontario, 3 Fed. 49, 57.]

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

6. "The last assessment roll," referred to in the statute, is the last assessment roll next preceding the making of such affidavit, and not the last assessment roll next preceding the issuing of the bonds.

7. The town of Lewiston was a town "situate along the route" of said railroad, within the statute.

8. The pendency of writs of certiorari brought to have the determination of the assessors, and the action of the commissioners in pursuance thereof, declared void, is not such notice of the invalidity of the bonds, as to defeat the title of a purchaser of the bonds for value, before maturity, who has no actual notice of the pendency of the writs or of the objection to the bonds.

9. There being no evidence on which the jury could properly proceed to find a verdict for the defendant on the issue as to whether the plaintiff was a bona fide holder of the bonds for value, it was proper not to allow the defendant to go to the jury on that question.

10. The commissioners having power to issue coupons with the bonds, a statement in the bonds that they have caused one of their number to sign the coupons is equivalent to a signing of the coupons by all of them.

11. Payment of coupons on the bonds having been demanded, it is proper to allow interest on them.

12. The statutes under which the bonds were issued are not invalid.

13. Where legislative authority has been given to a municipality or to its officers, to subscribe for the stock of a railroad company, and to issue municipal bonds in payment, but only on some condition precedent, and where it may be gathered from the legislative enactment, that the officers of the municipality were invested with power to decide whether the condition precedent had been complied with, their recital that it has been, made in the bonds issued by them and held by a bona fide purchaser, is conclusive of the fact and binding upon the municipality, for, the recital is itself a decision of the fact by the appointed tribunal.

[Cited in Currie v. Town of Lewiston, 15 Fed. 379.]

[This was an action at law by Henry Phelps against the town of Lewiston, brought to recover the interest on certain coupon bonds. There was a verdict in favor of the plaintiff. Heard on a motion for a new trial.]

Starbuck & Sawyer, for plaintiff.
William S. Farnell, for defendant.

BLATCHFORD, Circuit Judge. This is a motion for a new trial. The suit is brought on 18 interest coupons of $35 each, due October 1st, 1874, being for six months' interest on 18 bonds of $1,000 each, issued by the defendant in aid of the Lake Ontario Shore Railroad Company, and on 7 interest coupons of $17.50 each, due the same day, being for six months' interest on 7 bonds of $500 each, of like issue. The amount of the bonds is $21,500, and the amount of these coupons is $752.50. The suit was tried before Judge Johnson, the late circuit judge, and a jury, and resulted in a verdict for the plaintiff, by direction of the court, for $845.40, of which $92.90 was for interest on the amount of the coupons. The defendant moves for a new trial, on a case containing exceptions.

The bonds are all of them of the same form, of which the following is a specimen: "United States of America, Town of Lewiston. No. 28. $1,000. County of Niagara, State of New York. Lake Ontario Shore Railroad Co. Issued by virtue of an act of the legislature of the state of New York, entitled: 'An act to authorize certain towns in the counties of Oswego, Cayuga and Wayne, to issue bonds and take stock in and for the construction of the Lake Ontario Shore Railroad,' passed May 11th, 1868 (chapter 811 of the Laws of 1868), and an act amending the same, passed April 19th, 1869 (chapter 241 of the Laws of 1869). These acts authorize any town, incorporated village or city, except the city of Rochester, in either of the counties of Oswego, Cayuga, Wayne, Monroe, Orleans, or the Second assembly district of Niagara, situate along the route of the Lake Ontario Shore Railroad, to subscribe for the stock of the Lake Ontario Shore Railroad, and to issue town, village or city bonds in payment thereof. Know all men by these presents, that we, the undersigned, commissioners under the above entitled acts, for the town of Lewiston, in the county of Niagara and state of New York, upon the faith and credit and in behalf of said town, for value received, promise to pay to the bearer the sum of one thousand dollars, on the first day of April, in the year one thousand eight hundred and eighty-three, at the American Exchange National Bank in the city of New York, with interest at seven per cent. per annum, payable semi-annually, on the first days of April and October in each year, at the same place, on the presentation and surrender of the coupons for such interest, hereto annexed. In witness whereof, we have hereunto set our hands and seals, and have caused the coupons annexed hereto to be signed by O. P. Scovell, one of our number, this first day of July, in the year one thousand eight hundred and seventy-two. O. P. Scovell, (Seal.) J. E. Ways, (Seal.) Geo. C. Haywood, (Seal.) Commissioners."

The coupons sued on are all of them of the same form, of which the following is a specimen: "$35.00. Town of Lewiston. The American Exchange National Bank of the City of New York will pay the bearer thirty-five dollars on the first day of October, 1874, being semi-annual interest due on bond No. 28. O. P. Scovell, Commissioner."

The act of 1868, as amended by the act of 1869, provides as follows: "Section 1. On the application in writing of twelve or more freeholders, residents in any town, incorporated village or city, except the city of Rochester, in either of the counties of Oswego, Cayuga, Wayne, Monroe, Orleans, or of the Second assembly district of Niagara, situate along the route of the Lake Ontario Shore Railroad, it shall be the duty of the county judge of the county wherein such town, incorporated village or city, is situated, or a justice of the supreme court, at any special term thereof, within ten days after receiving such application, to ap-

point, under his hand and seal, not more than three freeholders, residents of said town, incorporated village or city, to be commissioners for said town, incorporated village or city, to carry into effect the purposes, and provisions of this act, who shall hold their offices respectively for the term of five years, and until others shall be appointed and shall have duly qualified, a majority of whom shall constitute a quorum for the transaction of any business, or the doing of any act or thing, provided for in this act; and every five years thereafter, and as often as a vacancy shall for any cause occur, the said county judge or justice of the supreme court shall appoint a successor or successors for such commissioner or commissioners for said towns, incorporated villages or cities respectively, upon the like application, as hereinbefore provided. Sec. 2. It shall be lawful for said commissioners to borrow, on the faith and credit of their respective towns, incorporated villages and cities aforesaid, such sums of money, not exceeding twenty per cent. of the valuation of said town, incorporated village or city, to be ascertained by the last assessment rolls thereof respectively, for a term not exceeding twenty-five years, at a rate of interest not exceeding seven per cent. per annum, and to execute bonds therefor under their hands and seals respectively. The bonds so to be executed may be in such sums, not exceeding the amount set forth in the consent of the tax payers of said incorporations, and payable at such times and places, not exceeding twenty-five years, and in such form, as said commissioners and their successors may deem expedient; but no such debt shall be contracted or bonds issued by said commissioners of or for either of said towns, incorporated villages or cities, until consent, on or before January first, eighteen hundred and seventy-one, in writing, proved by a subscribing witness, who shall swear, in addition to the ordinary form of affidavits of subscribing witnesses, that the party executing informed the witness that he knew the contents thereof, or acknowledged as provided for conveyances of real estate, shall first have been obtained, of persons owning more than one-half of the taxable property assessed and appearing upon the last assessment roll of such town, incorporated village or city, and a majority of the tax payers, as appears by such assessment rolls respectively, and which fact shall be proved by the affidavits of the assessors, or a majority of them, of such towns, incorporated villages, or cities respectively; and, it shall be the duty of the said assessors, and they are hereby authorized, to make such affidavit, when the said consent shall be obtained. Said affidavit and consent, and a copy of the assessment roll, shall be filed in the clerk's office in the respective counties, and certified copies thereof in the town clerk's office of each of the said towns respectively, and the same, or a certified copy thereof, shall be evidence of the facts therein contained and certified, in any court of the state, and before any judge or justice thereof.

Sec. 3. The said commissioners, authorized by this act, may, in their discretion, dispose of such bonds, or any part thereof, to such persons or corporations, and upon such terms, as they shall deem most advantageous for their said town, incorporated village or city, but for not less than par; and the money that shall be raised by any loan or sale of bonds shall be invested in the stock of said company of the Lake Ontario Shore Railroad, and said money shall be applied and used in the construction of such railroad, its buildings and necessary appurtenances, and for no other purposes. The commissioners respectively, in the corporate name of each of their said towns, incorporated villages or cities, may subscribe for and purchase stock of such company, to the amount they may severally have borrowed as aforesaid; and, by virtue of said subscription or purchase of stock, and upon receiving certificates, or the transfer of certificates, for the amount of said stock so subscribed for or purchased by them, the said towns, incorporated villages or cities shall acquire all the rights and privileges, and be liable to the same responsibilities, as other stockholders of said company. And it shall be lawful for the commissioners provided for in this act, or either of them, with the consent of the others, or a majority of said commissioners, to participate in and to act in all the regular and legally authorized meetings of the stockholders; and either of them may act as directors of such company, if he shall be duly elected as such." Section 4 of the act of 1868 provides for an annual report by the commissioners to the board of supervisors of the county, of the amount required during the next ensuing year to pay the principal or interest of any of the bonds. It also provides that the dividends on the stock shall be received by the commissioners and be applied by them to pay the interest on the bonds; and that, if the dividends shall not be sufficient to pay any accruing principal and interest, the board of supervisors shall assess, levy and collect, as a tax, from the real and personal property, the sum reported by the commissioners to be necessary to make good the deficiency; and it shall, when collected, be paid to the commissioners and applied by them to pay the principal and interest of the bonds. The fifth section contains provisions for disposing of the stock. The sixth and seventh sections contain provisions in regard to paying the principal and interest of the bonds. Sections 8 to 11 relate to the official bonds of the commissioners and vacancies and compensation. Section 12 relates to proceedings by the railroad company to obtain compulsorily title to real estate. Section 13 provides as follows: "Sec. 13. No portion of the bonds issued by any town, incorporated village, or the moneys arising therefrom, shall be paid, laid out or expended in any other town than that by which such bonds shall be issued, or in which such incorporated village is situated, until at least ten thousand dollars per mile,

upon an average, shall have been paid or expended upon the grading or construction of each mile of said road lying within such town, unless said road shall be graded and made ready for laying the rails thereon, through such town, at a less cost than ten thousand dollars per mile. This section shall not apply to any town through which said road shall not run."

The first and second sections of the act of 1869 amend, respectively, the first and second sections of the act of 1868, so as to read as before recited. Section 3 of the act of 1869 provides that "all proceedings heretofore taken in the organization of this company, and in filing their articles of association, shall be deemed legal and valid * * * for the purposes of the organization of this corporation." Section 4 provides that "the commissioners of any town, village or city may issue their bonds directly to the directors of said Lake Ontario Shore Railroad Company, at not less than their par value, and receive, in exchange therefor, the stock of said company at not more than par."

The articles of association of the Lake Ontario Shore Railroad Company were filed in the office of the secretary of state of the state of New York, in March, 1868. They set forth, that the corporation is created "for the purpose of constructing, maintaining and operating a railroad for public use, in the conveyance of persons and property from the city of Oswego, in the county of Oswego, to the village of Lewiston, in the county of Niagara;" and that "the line of railroad contemplated, and herein provided for, shall be constructed with all proper turnouts, sidings and branches, from the city of Oswego, through the counties of Oswego, Cayuga, Wayne, Monroe, Orleans and Niagara."

From the proceedings put in evidence on the trial, it appears, that the three commissioners by whom the bonds were issued were duly appointed such by the county judge of Niagara county. The proceedings were originally instituted in June, 1870. The consents of the taxpayers put in evidence are headed thus: "Consents of taxpayers of the town of Lewiston in the county of Niagara, that said town may issue bonds and take stock in and for the construction of the Lake Ontario Shore Railroad." The consents consist of nine separate papers. Eight of them are alike in form. They are all signed by different persons. The form of the eight is this: "The undersigned, taxpayers of the town of Lewiston, in the Second assembly district in the county of Niagara, state of New York, hereby consent in writing, that the railroad commissioners appointed for said town of Lewiston, in pursuance of the provisions of an act entitled 'An act to authorize certain towns in the counties of Oswego, Cayuga and Wayne to issue bonds and take stock in and for the construction of the Lake Onta-

rio Shore Railroad,' passed May 11th, 1868, and the act amendatory thereof, passed April 19th, 1869, chapter 241, Laws of 1869, may borrow, on the faith and credit of the town of Lewiston in said county, the sum of one hundred and fifty-two thousand dollars, that being an amount not exceeding twenty per cent. of the valuation of said town of Lewiston, as shown by the last assessment roll of said town, and may issue bonds therefor, under their hands and seals, in the manner provided in said act and the act amendatory thereof, may subscribe for and take stock in and for the construction of the Lake Ontario Shore Railroad, for the amount above named." The form of the ninth paper is this: "We * * * owners of real estate in the town of Lewiston, county of Niagara and state of New York, do, by these presents, consent to the issue of the bonds by the commissioner or commissioners of the said town of Lewiston, for the Lake Ontario Shore Railroad, under chapter 811 of the Laws of 1868, as amended by chapter 241 of the Laws of 1869, of the state of New York, passed April 19th, 1869." These consents were perfected in March, May, July and August, 1870. They were all in writing and were proved or acknowledged as required by the statute. An affidavit of the assessors of the town of Lewiston was then made and attached to them, in this form: "State of New York, Niagara County, ss.: George C. Hayward and Alexander Lane, being duly sworn, each for himself says, that they are a majority of the assessors of the town of Lewiston, in said county, and that the consent in writing has been obtained of persons owning more than one-half of the taxable property of said town, assessed and appearing upon the last assessment roll of said town, and a majority of the taxpayers, as appears by said assessment roll, which consent has been proved and acknowledged according to the provisions of an act entitled 'An act to authorize certain towns in the counties of Oswego, Cayuga and Wayne to issue bonds and to take stock in and for the construction of the Lake Ontario Shore Railroad,' passed May 11th, 1868, and the act amendatory thereof, passed April 19th, 1869, chapter 241 of the Laws of 1869; that the commissioners of the town of Lewiston, appointed to carry into effect the provisions of said act and the act amendatory thereof, are now authorized by the terms of said act and the act amendatory thereof, to borrow, on the faith and credit of the said town of Lewiston, the sum of ($152.000) one hundred and fifty-two thousand dollars; and these deponents further say, and each for himself says, that the said sum of one hundred and fifty-two thousand dollars does not exceed in amount twenty per cent. of the taxable property assessed and appearing upon the last assessment roll of said town; and these deponents further say, and each for himself says, that they are a majority

of all of the assessors of the said town of Lewiston, and that they have now met together as a board of assessors, to perform the duty required of them in and by said act and the act amendatory thereof. George C. Hayward, Alexander Lane, Assessors of the Town of Lewiston. Subscribed and sworn to before me, at Lewiston, this 24th of August, 1870. S. B. Piper, Notary Public in and for Niagara County." Said affidavit and the consents and the proofs and acknowledgments, attached together, were, with a copy of the assessment roll of the town made on the 30th of September, 1869, filed in the office of the clerk of Niagara county, on the 10th of September, 1870. A certified copy of all said papers was filed in the office of the town clerk of the town of Lewiston.

On the 17th of March, 1871, an act was passed (chapter 127 of the Laws of New York of 1871), entitled "An act to facilitate the construction of the Lake Ontario Shore Railroad, and to amend the several acts in relation thereto." Section 1 gives the railroad company time until January 1st, 1874, for complying with section 2 of the act of April 19th, 1869, and to obtain the consent in writing of taxpayers. Section 2 of the act of 1871 provides as follows: "Sec. 2. No consent of taxpayers of any town, city or village, given or obtained under or by virtue of the several acts passed authorizing the issuing of bonds to aid in the construction of the Lake Ontario Shore Railroad, in writing, nor the bonds issued or to be issued upon the faith of said consent, shall be invalidated or held void, or in any manner affected, by reason of any informal, clerical or other defect, irregularity or omission, in the proofs or acknowledgments of such consents, or in the affidavits required to be made by any assessors, town or county clerk, or other person or body, or in the filing or recording in any town or county clerk's office, provided that a majority of the taxpayers of any such town or city, owning or representing a majority of the taxable property of said town or city, assessed to them, and appearing upon the assessment roll of such town or city, shall have actually executed or signed such consent, and provided that such defect, irregularity or omission is merely technical; and none of the provisions of this act, except sections one and seven, shall apply to towns where the consents were not completed prior to January first, eighteen hundred and seventy-one, pursuant to chapter eight hundred and eleven of the Laws of eighteen hundred and sixty-eight, as amended by section two of chapter two hundred and forty-one of the Laws of eighteen hundred and. sixty-nine, but shall be applicable to any town, city or village giving its consent to bond after the passage of this act." Sections 3 and 4 validate conditional consents and conditional subscriptions to stock. Sections 5 and 6

are immaterial. Section 7 provides, that the terms "taxpayers" and "person owning," used in section 2 of the act of April 19th, 1869, "shall be construed and shall mean, all persons owning or representing, as president, trustee or as agent duly authorized for that purpose, including owners of non-resident lands, more than one-half of the taxable property of said town or city, assessed and appearing upon the assessment roll therein referred to."

On the 18th of October, 1871, the three commissioners met together and executed their official bond and took the oaths of office and signed a subscription for $152,000 of the stock of the railroad company. The commissioners, on the 8th of May, 1872, signed $152,-000 of bonds. By direction of the commissioners the coupons were signed by Scovell, one of the commissioners. On the 5th of June, 1872, two of the commissioners delivered the bonds to the railroad company, and received in exchange for them a certificate for 1,520 shares of the capital stock of the company, of the par value of $100 each, dated June 5th, 1872. The certificate is in the name of the town of Lewiston, and the town has never offered to surrender it. The commissioners attended meetings of the directors of the company, and voted on the stock on behalf of the town. The company provided for the interest which fell due October 1st, 1872, on the bonds. On a report made by the commissioners to the board of supervisors, the sum of $10,640 was assessed, levied and collected on the real and personal estate of the town of Lewiston, to pay the interest on the bonds falling due April 1st, 1873, and October 1st, 1873, and was paid over to the commissioners by the county treasurer. The interest due April 1st, 1873, was paid by the commissioners out of those moneys, and the coupons so paid (except two) were delivered by the commissioners to the auditors of the town.

The $152,000 of bonds were delivered by the company to the firm of George B. Phelps & Co., contractors, who had contracted to build the road from Oswego to Lewiston. The firm was composed of George B. Phelps, Willis Phelps and Daniel D. Warren. In a division of the bonds, the $21,500 of bonds involved in this suit were taken by George B. Phelps. In September, 1874, George B. Phelps sold the $21,500 of bonds to the plaintiff, in exchange for $20,000 of the stock of the Addison (Vermont) Railroad Company. The plaintiff purchased the bonds in good faith, and without notice of any infirmity in regard to them, and under circumstances which made him a bona fide holder of them for a valuable consideration, without notice.

On the 16th of April, 1872, a writ of certiorari was issued, by the supreme court of New York, to the two surviving assessors of the three assessors who made the affidavit of August 24th, 1870, to review the determination set forth in said affidavit. This

writ was served on the two surviving assessors on the 16th of April, 1872, and, on the same day, a copy of it was served on the three commissioners, with a notice to them that it had been issued and served, and that all proceedings under and in pursuance of the affidavit of the assessors were stayed, as a matter of law. This writ was set aside June 20th, 1872. While a motion to set it aside was pending, and, on the 13th of May, 1872, a writ of certiorari was issued, by the supreme court of New York, to the clerk of Niagara county, commanding him to certify the proceedings on file in his office relating to the matter. This writ was served on the clerk May 23d, 1872. On the 4th of February, 1873, a writ of certiorari was issued by the supreme court of New York, to the three commissioners, commanding them to certify what was their authority to act as such, and what they had done in subscribing for stock, and in signing and issuing bonds, and in reporting to the board of supervisors in respect to a levy to pay principal or interest of the bonds, and in respect to receiving the amount of tax levied, and what they had done with the same. This writ was served on one of the commissioners on the 4th of February, 1873, and on the other two on the 6th of March, 1873. A writ of certiorari to the two surviving assessors, to review the determination of the assessors, contained in their said affidavit, was issued by the supreme court of New York, on the 28th of August, 1873, and was served on each of them within ten days afterwards. To the writ of May 13th, 1872, addressed to the clerk of Niagara county, he made return, certifying the papers on file in his office, relating to the bonding of the town of Lewiston. To the writ of February 4th, 1873, addressed to the commissioners, they made a return, setting forth their doings, and afterwards a further return. To the writ of August 28th, 1873, addressed to the assessors, they made a return, and afterwards a further return. There was a hearing before the supreme court on the three writs of May 13th, 1872, February 4th, 1873, and August 28th, 1873, and the returns thereto, considered as one proceeding, and, on the 23d of October, 1874, the supreme court vacated the proceedings, determination, affidavit and adjudication of the assessors of August 24th, 1870, and the appointment of, and all the acts, doings and proceedings of, the commissioners. On appeal to the court of appeals, that court (People v. Walter, 68 N. Y. 403) reversed the judgment below, so far as it affected the commissioners, and dismissed the appeal as to the assessors. The court say: "The bonds of the several towns interested had been issued and delivered in exchange for the stock of the railroad corporation many months before the initiation of these proceedings, so far as they affect the assessors, a former writ of certiorari having been quashed, and at least one instalment of interest had been levied upon the towns, and paid to the holders of the bonds. These bonds cannot be recalled and restitution made, or the parties restored to their former condition, by any judgment or order in these proceedings, and neither the towns nor the bondholders will be bound or estopped by the judgments of this or any other court in these proceedings. A judgment of any court, whatever its jurisdiction, is only evidence against parties to the record, or those in privity with them. The records would not be competent evidence in an action upon the bonds; and, if our judgment should be adverse to the validity of the proceedings under the statutes authorizing the issue of bonds, the bondholders might laugh at our decision, knowing that it could not affect them; and, if we should affirm the action of the assessors, the town authorities might snap their fingers, and, in an action upon the bonds, make every defence which legal skill should suggest, without the slightest impediment from our opinions or judgments." As to the judgment vacating the appointment of the commissioners, the court held that the supreme court had no jurisdiction to review, by certiorari, the title of the commissioners to office. As to the judgment of the supreme court, so far as it professed to annul the action of the commissioners in subscribing for the stock of the railroad corporation, and issuing the bonds of the town therefor, the court of appeals held that the judgment was a nullity, because it purported to set aside and avoid the contracts and dealings of the commissioners and the railroad company, and to nullify the bonds of the town, without the presence of the town or the railroad corporation as parties to the proceedings, and to annul securities issued to third persons, who had not been heard or had a day in court. It also held, that the action of the commissioners, being purely ministerial, and not calling for the exercise of judicial discretion and determination, could not be reviewed by certiorari. As to the assessors, it held that their action could have been inquired into by certiorari, if the writ had been brought before their action had been consummated, and put beyond their recall or the powers of the court, and had been directed to them, and had not been vitiated by being united with other writs in the same proceeding, directed to other officers. It held, that the supreme court ought to have dismissed the certiorari as to the assessors; but that, inasmuch as any judgment which the court of appeals might render could have no practical effect in determining any pending litigation, or any controversy that might arise in the future, and as no harm could arise from permitting the formal judgment of the supreme court to stand, as to the assessors, it would dismiss the appeal as to them.

At the trial of the present suit, the defendant offered in evidence a copy of the writ of certiorari of April 16th, 1872, and proof of

the service thereof on the assessors and on the commissioners; also a copy of the writ of certiorari of May 13th, 1872, and proof of the service thereof on the county clerk; also a copy of the writ of certiorari of February 4th, 1873, and proof of the service thereof on the commissioners; also a copy of the writ of certiorari of August 28th, 1873, and proof of the service thereof on the assessors; also a copy of the judgment roll forming the judgment of the supreme court, of October 23d, 1874. All of these papers were excluded by the court, on objection by the plaintiff, as being irrelevant. It is entirely clear that none of those papers are competent evidence to affect the rights of the plaintiff in this suit. The reasons for such view cannot be set forth in more convincing language than that before cited from the opinion of the court of appeals of New York.

The defendant offered, also, in evidence, the following matters, all of which were excluded by the court as irrelevant: Proof of service on the commissioners, in August, 1872, of notice of hearing in the matter of the certiorari to the clerk, of May 13th, 1872; proof of the appearance of the commissioners by an attorney, in said matter, in September, 1872; proof of the service of like notice of hearing, in August, 1872, on the attorney for the railroad company, and on the attorney for said Daniel D. Warren; proof that a suit was brought in the supreme court of New York, by certain tax payers of the town of Lewiston, against the three commissioners, the railroad company, the said George B. Phelps, Willis Phelps and Daniel D. Warren, and also Henry W. Phelps and J. W. Phelps, the object of which suit was to restrain the defendants from issuing, transferring or negotiating the bonds of the town, and to have the bonds delivered up to be cancelled; that process in said action was served on the three commissioners on the 14th of June, 1872, and on Warren and the company on the 17th of June, 1872; that with the process an injunction order was served on Warren and on the company; that Warren and the company appeared in said action on the 21st of June, 1872, and put in a demurrer to the complaint, and on the same day the commissioners appeared and put in an answer; that the action was still undisposed of on said answer; that the demurrer was not disposed of until 1873, and an appeal was taken by the plaintiffs from the judgment rendered thereon, and not disposed of until January, 1875; proof of the service on the board of supervisors of Niagara county, and on the supervisor of the town of Lewiston, in November, 1872, of notice of the issuing of the certiorari to the county clerk, of May 13th, 1872, and of notice that the determination of the assessors was void, and that the bonds were void, and that no tax could be legally imposed to pay the principal or interest of the bonds, and that all proceedings were legally stayed un-

til the final determination of the proceedings under said writ; proof of the service on the said board of supervisors, in October, 1873, of notice of the issuing of the writs of certiorari which had then been issued, and that all proceedings to levy moneys for the principal or interest of the bonds were stayed as a matter of law, and that the board was restrained from proceeding until a decision on the writs, and that, if they should proceed, they would be punished for a contempt, and that the commissioners, on October 7th, 1873, had moved the supreme court for leave to pay the interest on the bonds whenever it should become due, and the motion had been denied; proof that the commissioners had moved the supreme court for leave to pay the coupons on the bonds involved in this suit, with others, and that the motion had been denied on October 7th, 1873; proof that an order had been made by the supreme court, January 27th, 1873, enjoining the commissioners from paying out any money as principal or interest on the bonds, until the decision of a motion then pending for a writ of certiorari to be issued to the commissioners; proof that an order had been made by the supreme court, in the certiorari proceedings, in November, 1873, adjudging the commissioners guilty of contempt, in having delivered to the board of supervisors, on the 28th of October, 1873, their report requiring said board to collect from the taxpayers of the town $10,640, to pay the interest for the coming year on the bonds, such delivery having been made after the issuing of the writ of February 4th, 1873, and in disregard of the stay of proceedings imposed thereby, and adjudging that they should be imprisoned until they should withdraw their report, unless they should, within six days, and before any proceedings had been taken thereon by the board of supervisors, withdraw their report, and that they should pay a fine of ten dollars; proof that an order had been made by the supreme court, on the 24th of November, 1873, directing the commissioners to deposit in a bank, within thirty days, to the credit of the certiorari proceedings, to be payable on the order of said court, all moneys in their hands which they received to pay the principal or interest of the bonds; proof that the commissioners, before paying the coupons which they had paid, knew that the writ to the county clerk had been issued and served on him, and had appeared by counsel in that proceeding, and that, before any of the coupons were paid, the attorneys for the commissioners had been served with notice that the writ of February 4th, 1873, would be applied for, and that such notice was read by the commissioners before they had received any money for the town, and before they had paid any money on the coupons; proof that the commissioners paid some coupons before they were due, and that George B. Phelps & Co. were then the owners of the greater part of the bonds to which

the coupons so paid belonged; proof that such coupons were paid before due, at the instigation of one of the commissioners and of the vice-president of the railroad company, and that they knew that writs of certiorari had been served with a view to test the validity of the proceedings to bond the town: proof that, when the assessors met as a board, to ascertain whether consents had been obtained to the issuing of bonds and taking stock in the company, they did not, in making their estimate, take the dog-tax payers into account, and that they counted the taxpayers in the village and town indiscriminately, and estimated the number and property indiscriminately; proof that the commissioners agreed between themselves that the bonds should not be turned over to the company until they should have some indemnity that the suits pending should be settled, and that the road should be built; proof that, at a meeting of the commissioners in January, 1873, the treasurer of the railroad company proposed to discount the interest coupons falling due in April, 1873, and that it was resolved by the commissioners to accept the proposition, provided the company would refund the money to the town in case an injunction should be obtained; proof that, from an examination of the assessment roll and bonding roll of the town, consent had not been obtained of persons owning more than one-half of the taxable property assessed and appearing upon the assessment roll of said town for the year 1869, and of a majority of the taxpayers appearing upon said assessment roll; proof that a map, as a correct map of the proposed location intended to be adopted by the company for their railroad, from the county line of Orleans county, in and through Niagara county, was filed in the office of the clerk of Niagara county on the 10th of October, 1872, and not before, with a certificate endorsed thereon, made by the president, a majority of the directors, and the chief engineer of the company, to the above effect, and further certifying that the railroad was located according to the red line delineated on said map; proof, as a matter of fact, aside from said map, that the road was not located in Niagara county before the bonds were issued; proof of the following matters of fact: (1) That there was no map, showing the location of the railroad, filed in the office of the clerk of Niagara county till the 10th of October, 1872, as required by the statute; (2) that the route on which the road was in fact located was not surveyed or in any manner designated until after the bonds were issued, and not until July and August, 1872; (3) that there are on the assessment roll of the town for the year 1869, 409 names of taxpayers, aside from the names of persons who paid only a dog tax; (4) that only 193 of the persons named on said assessment roll appear upon the consent papers, as consenting to the bonding of the town; (5)

that the assessors, in determining the number of persons whose names are on the assessment roll, did not count the persons who appeared on said roll as paying a dog tax only; (6) that there were 57 persons whose names appear on the assessment roll as paying only a dog tax, and which do not otherwise appear on said roll; (7) that the total amount of property which appears upon said assessment roll, as assessed for that year, is $746,395; (8) that the persons whose names appear upon said assessment roll, and who have signed the consent papers, are assessed upon said roll for only the total sum of $216,908; (9) that the railroad was not located until after the issuing of the bonds by the commissioners, and not until after the commissioners were appointed; (10) that consent in writing had not been obtained to the contracting of a debt by, or issuing of bonds of, the town, in aid of the railroad company, or for the purpose of taking stock in the company, of a majority of the tax payers, as appears by the assessment roll of the town for the year 1869; (11) that consent in writing had not been obtained of persons owning more than one-half of the taxable property assessed and appearing upon the assessment roll of the town for the year 1869, to the contracting of a debt or issuing bonds of the town, and taking stock in and for the construction of the railroad.

These offers of proof on the part of the defendant were undoubtedly overruled by the court on the ground that the plaintiff had shown himself to be a bona fide holder of the bonds in question, as the record shows that the court, in connection with the offer in evidence of the writ to the assessors, of April 16th, 1872, held that the plaintiff was a bona fide holder of said bonds.

At the close of the evidence, the defendant requested the court to charge the jury, that, from the evidence in the case, the plaintiff was not a bona fide holder for value of the bonds in question, but the court refused so to charge. The defendant's counsel then claimed that there was sufficient evidence in the case tending to show that the plaintiff was not a bona fide holder for value of the bonds, to entitle the defendant to have that question submitted to the jury, and asked leave of the court to address the jury on that question. The court refused to submit the question to the jury or allow the counsel to address the jury, and decided that the plaintiff was a bona fide holder for value, of the bonds. Then followed the verdict, under the direction of the court.

The defendant, at the trial, took an objection to the affidavit of the assessors, on the ground that it does not recite the facts required by the statute to authorize the commissioners to subscribe for stock or to issue bonds for the town; that it merely recites that certain persons have consented; that it does not state what they have consented to, nor does it purport to recite that the road is

or was located in the town, or that consents were obtained to bond the town; that the affidavit does not relate to the Lake Ontario Shore Railroad; that the commissioners had no authority to act under it; and that it does not appear, in whole or in part, to be in conformity to the requirements of the statute. The objection was overruled.

At the close of the plaintiff's evidence the defendant moved for a nonsuit on these grounds: (1) That the plaintiff had failed to make out a cause of action; (2) that it is incumbent on the plaintiff to prove that the road was located before the bonds were issued; (3) that the plaintiff must prove the fact that the town was situated along the route of the railroad, before the commissioners were authorized to issue its bonds; (4) that the fact that the road terminates in the village of Lewiston, which is an incorporated village, does not prove that the town is so situated; (5) that there is no evidence which shows that the assessors of the town were authorized to make their affidavit authorizing the commissioners to bond the town; (6) that there is no evidence showing that the county judge had authority to appoint the bonding commissioners at the time they were appointed; (7) that there is no evidence showing that the commissioners were authorized to make a contract for the bonding of the town, or to sign or issue the bonds of the town.

It must be regarded now as settled law for this court, by the decisions of the supreme court of the United States, that, where legislative authority has been given to a municipality or to its officers, to subscribe for the stock of a railroad company and to issue municipal bonds in payment, but only on some precedent condition, and where it may be gathered from the legislative enactment, that the officers of the municipality were invested with power to decide whether the condition precedent had been complied with, their recital that it has been, made in the bonds issued by them and held by a bona fide purchaser, is conclusive of the fact and binding upon the municipality; for, the recital is itself a decision of the fact by the appointed tribunal. The foregoing is the statement of the doctrine by Mr. Justice Strong, for five judges of the court, in Town of Coloma v. Eaves, 92 U. S. 484. In the same case Mr. Justice Bradley, concurring, stated the rule thus: "If, when the law requires a vote of tax payers, before bonds can be issued, the supervisor of a township, or the judge of probate of a county, or other officer or magistrate, is the officer designated to ascertain whether such vote has been given, and is also the proper officer to execute, and who does execute, the bonds, and if the bonds themselves contain a statement or recital that such vote has been given, then the bona fide purchaser of the bonds need go back no further. He has a right to rely on the statement, as a determination of the question." The rule, as stated by Mr. Justice Strong, in

Town of Coloma v. Eaves [supra], is re-asserted by the court, in the same language, in Marcy v. Township of Oswego, 92 U. S. 637, and in Commissioners v. Bolles, 94 U. S. 104. It was recognized and applied in Commissioners v. January, Id. 202. In Commissioners v. Clark, Id., 278, the rule is stated thus by Mr. Justice Clifford, for the court: "Bonds of the kind, executed by a municipal corporation, to aid in the construction of a railroad, if issued in pursuance of a power conferred by the legislature, are valid commercial instruments, and, if purchased for value, in the usual course of business, before they are due, give the holder a good title, free of prior equities between antecedent parties, to the same extent as in case of bills of exchange and promissory notes. Such a power is frequently conferred to be exercised in a special manner, or subject to certain regulations, conditions or qualifications; but, if it appears that the bonds issued show, by their recitals, that the power was exercised in the manner required by the legislature, and that the bonds were issued in conformity to the prescribed regulations and pursuant to the required conditions and qualifications, proof that any or all of the recitals are incorrect will not constitute a defence to the corporation, in a suit on the bonds or coupons, if it appears that it was the sole province of the municipal officers who executed the bonds, to decide whether or not there had been an antecedent compliance with the regulations, conditions or qualifications which it is alleged were not fulfilled." The same doctrine is re-asserted by the same court in the recent case of County of Warren v. Marcy, 97 U. S. 96.

But the supreme court has gone further. In Knox Co. v. Aspinwall, 21 How. [62 U. S.] 544, one of the grounds on which the decision rested was, that the mere issue of the bonds, containing a recital that they were issued under and in pursuance of the legislative act, was a sufficient basis for an assumption by the purchaser that the conditions on which the county (in that case) was authorized to issue them had been complied with; and it was said that the purchaser was not bound to look farther, for evidence of such compliance, though the recital did not affirm it. In Town of Coloma v. Eaves, it is said, by five judges, that the position so taken in Knox Co. v. Aspinwall [supra] was re-affirmed by the court in Moran v. Miami Co., 2 Black [67 U. S.] 732, in Mercer Co. v. Hackett, 1 Wall. [68 U. S.] 83, in Mayor v. Muscatine, Id., 384, and in Supervisors v. Schenck, 5 Wall. [72 U. S.] 784, and has never been overruled. In Town of Coloma v. Eaves, Mr. Justice Bradley dissented from the opinion of the court so far as it might be construed to re-affirm the points thus asserted in Knox Co. v. Aspinwall.

In the present case, the bonds state on their face that they are issued by virtue of the acts of the legislature which the bonds particularly refer to by title, date of pas-

sage, chapter and year, and that those acts authorize any town in the second assembly district of Niagara county, situate along the route of the Lake Ontario Shore Railroad, to subscribe for the stock of that railroad and to issue town bonds in payment therefor, and that the commissioners under said acts for the town of Lewiston, in the county of Niagara, and state of New York, upon the faith and credit, and in behalf, of said town, promise to pay, &c. The statute provides, that no bonds shall be issued by the commissioners until the consent specified shall have been obtained in writing. The bonds do not state that the consent is a condition precedent to the issue of the bonds, nor do they state that the consent required by the acts has been obtained. It is quite clear that the rule laid down in Town of Coloma v. Eaves, and like cases, as applicable where the bonds state that the condition precedent prescribed by the statute has been complied with, is not applicable to the present case. The rule laid down in Knox Co. v. Aspinwall, as applicable where the bonds recite that they were issued under and in pursuance of the statute, may apply to this case, in view of the recital in these bonds that they are issued by virtue of the statutes named. But there is a stronger ground for upholding the correctness of the rulings at the trial. The second section of the act of 1868, as amended by the second section of the act of 1869, provides, that the fact that the prescribed consent in writing of taxpayers, proved or acknowledged as provided, has first been obtained, shall be proved by the affidavits of the assessors, or a majority of them, of the town; that it shall be the duty of the assessors to make the affidavit when the consent shall be obtained; that the affidavit and consent, and a copy of the assessment roll, shall be filed in the county clerk's office, and a certified copy thereof in the town clerk's office; and that the same, or a certified copy thereof, shall be evidence of the facts therein contained and certified, in any court of the state. As the commissioners are to issue the bonds, the meaning of the statute is, that the affidavits of the assessors, or a majority of them, that the prescribed consent in writing, proved or acknowledged as provided, has been obtained, shall be proof to the commissioners of such fact, so as to authorize the issuing of the bonds, without its being necessary for the commissioners to examine the question further; and that the affidavit, or a certified copy of it, as filed, shall be evidence of such fact in any court of the state. Under this provision, such an affidavit of the assessors must be held to be proof of such fact, sufficient to protect a bona fide holder of the bonds, for a valuable consideration, without notice, without its being necessary for him to examine farther into the question as to whether the condition precedent has been complied with. Undoubtedly, there must be statute authority for the issue of the

bonds, and the provisions of the statute must be followed. A purchaser of the bonds, even though a bona fide purchaser, is referred by the bonds themselves to the terms of the statute. He there finds it enacted, that the bonds may be issued by the commissioners, if the consent in writing, proved or acknowledged as provided, of taxpayers of the town, to a specified number and amount, is first obtained, and that the affidavit of the assessors to that fact shall be proof of that fact for the action of the commissioners. Although the authority of the commissioners to issue the bonds is made dependent on the condition that the required consent of taxpayers shall be first obtained, yet it is equally clear that the commissioners, who are to issue the bonds, are to ascertain and determine, before issuing the bonds, that the required consent has been obtained, by receiving, as proof thereof, the affidavit of the assessors to the fact. The duty of ascertaining whether the required consent has been obtained is plainly vested by the statute in the commissioners, and the form and nature of the evidence they are to act on, as evidence of the fact, are prescribed. The fact of the issue of the bonds shows that they ascertained and determined that the condition precedent had been complied with; and, although the bonds do not, on their faces, refer in terms to the necessity or the fact of the consent, no bona fide purchaser of the bonds can be required to go back farther than the affidavit to which the statute refers the commissioners as proof. It was made the duty of the commissioners to determine, on specified evidence, whether the statutory prerequisite to an authorized issue of the bonds had been complied with, and it was also made their duty to issue the bonds in the event of such compliance. The case, in these respects, is within the principles laid down in Town of Coloma v. Eaves, 92 U. S. 484.

But, it is contended that the affidavit of the assessors is defective. The affidavit is shown by the evidence to have been attached to the consent papers, when the two were filed together in the county clerk's office. The affidavit states, that "the consent in writing has been obtained," of persons owning, &c., "which consent has been proved and acknowledged according to the provisions" of the two acts, specifying them definitely. It does not state otherwise what the consent is to, or for, or about. But, in view of the attachment of the consents to the affidavit, and of the contents of the affidavit, and of the contents of the consents, it must be held that the "consent" referred to in the affidavit is sufficiently designated therein as being the consent referred to in the statute and the consent specified in the consent papers.

It is further objected, that the statute requires that the assessment roll to be taken shall be "the last assessment roll," and that

the last assessment before the bonds were issued was the assessment roll of 1871. The assessment roll taken was the assessment roll of 1869. This was the last assessment roll in existence next preceding the 24th of August, 1870, when the affidavit of the assessors was made, and was the proper assessment roll.

It is further objected, that the route of the railroad had not been located when the commissioners were appointed, or when the bonds were issued; that there was no legal "route" of the road through Niagara county, until the map was filed in October, 1872; that, until then, it could not be said that the town of Lewiston was "situate along the route" of the road; and that, therefore, the commissioners were not legally appointed, and the bonds were not legally issued. The statute authorizes commissioners to be appointed for any town in the Second assembly district of Niagara county, which is "situate along the route of the Lake Ontario Shore Railroad." The 3d section of the act of 1868 expressly authorizes the investment of the proceeds of the bonds to be issued, in "the stock of the said company of the Lake Ontario Shore Railroad." The 12th section of the act refers to "the Lake Ontario Shore Railroad Company," as an existing corporation, formed under the general act of April 2d, 1850, and as having articles of association. The articles of association, which are in evidence, were filed March 17th, 1868. They are the articles of association referred to in the act of May 11th, 1868. They purport to be made under the general act of April 2d, 1850. They give the name of the corporation as the "Lake Ontario Shore Railroad Company," and state that the railroad for public use which the company is to construct, is to extend "from the city of Oswego, in the county of Oswego, to the village of Lewiston, in the county of Niagara," and is to run "through the counties of Oswego, Cayuga, Wayne, Monroe, Orleans and Niagara." It is shown, by the evidence, that the village of Lewiston is an incorporated village, in the town of Lewiston; that the town of Lewiston is in the Second assembly district of Niagara county, and one of the most westerly towns in the county, and situated on the Niagara river; and that the road ran through the town to the village. The court will take judicial notice of the geographical fact, that it is impossible to proceed from the county of Orleans, through the county of Niagara, to the village of Lewiston, without passing through the town of Lewiston. The town of Lewiston was, therefore, necessarily, a town "along the route" of the railroad. The proceedings for the appointment of the commissioners seem to be entirely regular, and not open to criticism.

It is further objected, that, when the bonds were delivered, on the 5th of June, 1872, the writ of certiorari to the assessors, issued April 16th, 1872, and served on the assessors and on the commissioners on the same day,

was in force, it not having been set aside until June 20th, 1872; that the writ of certiorari to the county clerk, issued May 13th, 1872, and served on him May 23d, 1872, was also in force on the 5th of June, 1872; that the pendency of those writs superseded the authority of the commissioners to issue the bonds; and that, if the plaintiff had, before purchasing, examined, as he ought to have done, the records in the office of the clerk of Niagara county, he would have learned those facts. The question then arises, whether the pendency of the writs of certiorari, brought to have the determination of the assessors, and the action of the commissioners in pursuance thereof, declared void, is such notice to all persons of the invalidity of the bonds, as to defeat the title of a purchaser of the bonds for value, before maturity, who had no actual notice of the pendency of the writs, or of the objection to the bonds. The plaintiff, when he purchased the bonds, had no information that there was any question as to the regularity of the issuing of the bonds, or as to their validity. He bought them for value, before maturity. The question involved has recently been passed upon by the supreme court of the United States, in the case, before cited, of County of Warren v. Marcy, 97 U. S. 96. In that case, a suit was brought by a taxpayer, in July, 1870, to set aside, and declare void, the bonding proceedings, and prevent the issue of the bonds. While the suit was pending, the bonds were issued and delivered to the railroad company, in payment of a subscription by the county to its stock. Subsequently the suit was decided in favor of the plaintiff. After that some coupons belonging to the bonds were purchased for value before maturity, by a person who had no actual notice of the alleged invalidity of the bonds, or of any suit in relation to them. The supreme court held, that the coupons were valid in the hands of the purchaser; that, while it is a general rule, that all persons dealing with property are bound to take notice of a suit pending with regard to the title thereof, and purchase it at their peril from any of the parties to the suit, yet that such rule does not apply to negotiable securities purchased before maturity; and that it is immaterial whether the negotiable securities are issued before the bringing of the suit or afterwards. The court say: "This very question was involved in the case of City of Lexington v. Butler, 14 Wall. [81 U. S.] 283. In that case, irregularities had occurred in the preliminary proceedings, and the city authorities refused to issue the bonds. A mandamus was applied for by the railroad company, for whose use the bonds were intended, and a judgment of mandamus was rendered, to compel the city to issue them, and it issued them accordingly. Subsequently this judgment was reversed by the court of appeals of Kentucky, and an injunction was obtained to prevent the railroad company from parting with the bonds. The injunction

was not obeyed. The bonds were negotiated whilst proceedings were still pending, and were purchased by the plaintiff, for value, before maturity, without any knowledge of these circumstances. The court held, that the bonds were valid in his hands." The principle thus decided applies to the present case, even though the bonds were issued in violation of any stay or injunction effected by the issuing and pendency of the writs of certiorari. The honesty and good faith of the plaintiff are not impeached. Under such circumstances, he was not bound to search the records of the town or county for notice of the pendency of litigations. Murray v. Lardner, 2 Wall. [69 U. S.] 110.

Even if the plaintiff in this suit is the person made a defendant by the name of Henry W. Phelps, in the suit brought in June, 1872, his rights cannot be affected by that fact, for it is not shown that he ever heard of that suit before he purchased the bonds. No service on the plaintiff of any notice of the judgment rendered in October, 1874, can affect his rights, for he purchased the bonds in September, 1874.

There was not sufficient evidence to entitle the defendant to go to the jury on the question as to whether the plaintiff was a bona fide holder of the bonds for value. There was no evidence on which the jury could properly proceed to find a verdict for the defendant on the issue of bona fides. That being so, and there being satisfactory evidence that the plaintiff was a bona fide holder, it was the duty of the court so to rule, and to hold that there was no evidence to go to the jury on that subject. Commissioners v. Clark, 94 U. S. 278.

The commissioners certainly had power to issue coupons with the bonds, and the statement in the bonds, that the commissioners had caused the coupons annexed to be signed by Scovell, one of their number, is equivalent to a signing of the coupons by all of the commissioners.

As the coupons appear to have been protested by a notary, and thus payment of them was demanded, it is difficult to see why interest from the time of the demand, on the amount of the coupons, is not recoverable, and it must be assumed that the $92.90 interest is such interest.

I have examined and considered all the exceptions taken at the trial, by the defendant, to the admission of evidence offered by the plaintiff, and to the exclusion of evidence offered by the defendant, and find none of them to be tenable. All of them which involve any substantial question are covered by the various points which have been above considered.

The position that the statutes under which these bonds were issued contravene the constitution of the state of New York, and are void, is not well taken.

I have not overlooked the facts, that interest on the bonds was paid by the town, and

that the town has retained the stock issued to it. These facts are urged as showing a waiver by the town of any defects or irregularities in the issuing of the bonds, and as operating as an estoppel against the defendant from raising any of the defences now set up. But the case is one so entirely clear for the plaintiff, without a resort to these considerations, that I do not stop to comment on them.

I find no error in the disposition of this case at the trial, and the motion for a new trial is denied, and judgment is ordered for the plaintiff on the verdict, and the stay of proceedings granted to the defendant is vacated.