## CURRIE *v.* TOWN OF LEWISTON.

(*Circuit Court, N. D. New York.* 1883.)

1. MUNICIPAL BONDS—TOWN "OFFICERS."

An act of the legislature of the state of New York, entitled "An act for the relief of the towns of Newfane, Wilson, and Lewiston, to abolish the office of railroad commissioners of said towns, and to enable each of said towns to adjust its indebtedness and issue bonds therefor," authorized the supervisor and justices of the peace, " or any three of such officers," to issue the bonds provided for thereunder. *Held,* that the term " officers of a town " includes the supervisor, and that the bonds having been executed and issued by four of the officers so named, though the supervisor was not one of them, were valid.

2. STATE AND FEDERAL COURTS.

State and federal tribunals are entirely independent of each other, and the United States circuit courts cannot be called upon to, close their doors to suitors because the questions which they seek to litigate are also involved in other actions between different parties in the courts of the state.

3. SAME—UNCONSTITUTIONALITY OF STATE ACTS.

The federal courts will not willingly pronounce, in advance of the state courts, a state act unconstitutional.

*Rhodes, Coon & Higgins,* for plaintiff.

*M. S. & B. J. Hunting,* for defendant.

COXE, J. This action is on bonds and coupons alleged to have been executed and issued by the defendant, pursuant to chapter 13 of the laws of New York passed February 17, 1881. The act is entitled "An act for the relief of the towns of Newfane, Wilson, and Lewiston, to abolish the office of railroad commissioners of said towns, and to enable each of said towns to adjust its indebtedness and issue bonds therefor."

The said act repeals all inconsistent acts, abolishes the office of railroad commissioner, authorizes the supervisor and justices of the peace, or any three of them, to issue new bonds at a rate of interest not exceeding 5 per cent., to redeem the railroad bonds issued by said towns, or any judgment entered thereon, and to adjust the said indebtedness. The fourth section is in the following words:

"The said bonds shall contain a recital that they are issued under the provisions of this act, and such recital shall be conclusive evidence, in any and all courts and places, of the validity of said bonds and the regularity of their issue."

The bonds in suit were issued under this act, and contain on their face a recital that they were so issued. They are signed by the four justices, but not by the supervisor; although the predecessor of the present supervisor, one William P. Mentz, signed an agreement, together with the four justices, to exchange the new bonds of the town for the old ones held by the plaintiff.

On the seventh day of August, 1879, the plaintiff commenced an action in this court against the defendant to recover on coupons cut from the original bonds issued in aid of the Lake Ontario Shore Railroad. An answer was interposed containing substantially the same defenses to those bonds which the answer here contains. On the trial of this action the plaintiff succeeded, and judgment was thereafter entered in his favor for the full amount demanded in the complaint. This judgment was satisfied by the plaintiff, and the old bonds held by him were surrendered: in consideration thereof the new bonds, under the act of 1881, were issued.

As to all questions litigated or in issue in that action the judgment is conclusive evidence, and this court will not again inquire into defenses which were there disposed of. See, also, as decisive of these

questions, *Phelps* v. *This Defendant*, 15 Blatchf. 131. The only defenses that can be considered here are those having reference solely to the new bonds issued under the act of 1881.

*First.* It is argued that the bonds are invalid because the supervisor did not sign them. The language of the act is: "The supervisor, together with the justices of the peace, or any three of such officers, * * * are hereby authorized to execute, under their hands and seals, and to issue, new bonds," etc.; and again: "The supervisor and justices * * * are hereby authorized to settle and adjust said indebtedness." The use of the word "officers" is significant. Had the legislature intended to make the signature of the supervisor an indispensable condition to the validity of the bonds, the act would have provided that the supervisor, together with the justices of the peace, or any three of such *justices*, are authorized, etc. There would have been a distinction between the two classes of officials. To argue that the qualification applies only to the justices of the peace, leaves out of sight the fact that the supervisor is, equally with them, a town *officer.* It seems reasonably clear that it was the intention of the legislature to authorize a majority of the five officers named to issue the bonds. Four of them having signed, the bonds are valid in this regard.

*Second.* On the third day of April, 1882, certain tax-payers of the town commenced an action in the supreme court of the state of New York, pursuant to chapter 531 of the Laws of 1881, against Galen Miller, as supervisor, praying for a perpetual injunction restraining him from paying over to the bondholders any of the town money received by him, and asking for other specific and general relief. A temporary injunction, granted by the county judge of Niagara county, is still in force. The pendency of this action is pleaded as a defense. How the plaintiff here can in any way be affected by a chancery action in the state courts between different parties, it is difficult to perceive. Such a defense could not be successfully pleaded in a similar action in the state courts, although it might there be said that two actions to determine substantially the same questions were unnecessary in the same tribunal, and that one should be stayed to await the result of the other. But such considerations are not relevant here; the state and federal tribunals are entirely independent of each other, and it will be hardly possible to produce an authority holding that the United States circuit courts should close their doors to suitors because the questions which they seek to litigate are

also involved in other actions between different parties in the courts of the state.

*Third.* It is alleged that the act of 1881, *c.* 13, is unconstitutional, null and void, for the reason that section 8 provides that "Any and all pieces or parcels of land situated and embraced within the boundaries of the towns of Somerset, Newfane, Wilson, and Lewiston, * * * except such pieces or parcels of land as by law were taxable in other towns prior to the passage of the general railroad bonding act of 1869, * * * shall be assessed for all taxes levied in said towns for the purpose of paying and liquidating any and all obligations or indebtedness of the towns aforesaid, respectively." The answer alleges that—

"At the time of the issue of said bonds there were, and ever since have been, and still are, a large number of persons owning and occupying farms divided by the town lines between the town of Lewiston and towns adjoining thereto, the occupants whereof then, and ever since have continuously, resided and still reside in the said town of Lewiston."

The pleader may have had in mind some article of the constitution which he thought forbade this legislation, but it is not pointed out. No authority has been cited upholding such a proposition, and the entire subject is, with the exception of the brief paragraph of the answer quoted, left wholly to conjecture. This court, in any case, should hesitate long before pronouncing, in advance of the state courts, a state act unconstitutional; but here there is apparently no foundation for the allegation. It is difficult to see wherein the limits fixed by the constitution are transgressed, and why the subject-matter of the act does not come directly within the scope of legislative powers. It follows that the plaintiff is entitled to recover.