FARMERS' LOAN & TRUST CO. *v.* SAN DIEGO STREET-CAR CO.

*(Circuit Court, S. D. California.* February 1, 1892.)

**1. RAILROAD MORTGAGE—FORECLOSURE AND SALE—PROPERTY INCLUDED.**
In a suit to foreclose a mortgage given by a street-railroad company to secure payment of certain bonds, it appeared that the bonds were invalid; but, all the property covered by the mortgage being in possession of a receiver appointed pending the litigation, who had issued certificates for expenses incurred for the preservation of the property, a decree was entered, upon consent of all parties in interest, ascertaining and fixing the amounts of their respective claims, and directing a sale of all the property of the company to satisfy the same. *Held*, that rails, fish-plates, and bolts purchased by the company for use on its road, but which had not been actually used, and were stacked upon land not within the company's right of way, were within the terms of the mortgage, which included all real and personal property of every kind and description "used or intended to be used in connection with or for the purpose of said railroad," and came clearly within the decree.

**2. SAME.**
Certain notes, secured by mortgage, which had been executed to the company by a land association, were set out in the receiver's inventory of property taken possession of by him under order of the court, and were in his hands at the time of making the decree by consent for the sale of all the company's property. *Held*, that even though such notes and mortgage were not included in the mortgage sought to be foreclosed, as they had been brought into the custody of the court under color of its authority, and all parties in interest were parties to the suit, the court had jurisdiction to decide all conflicting rights thereto, and should not release its control of them in order that they might be subjected to process obtained by creditors of the company from a state court, nor should it award such creditors a priority of lien by reason of their proceedings in the state court.

In Equity. Bill for foreclosure of mortgage. On petition of interveners to enforce claims against property in possession of the receiver. Denied. For former report, see 45 Fed. Rep. 518.

*Turner, McClure & Rolston* and *Myrick & Deering,* for complainant.

*Oscar A. Trippett,* for C. J. Fox and West Coast Lumber Company.

*Works, Gibson & Titus,* for receiver.

Ross, District Judge. This suit was brought to foreclose a mortgage executed by the defendant company to secure the payment of 250 of its bonds of $1,000 each, payable to the complainant as trustee or bearer. The property mortgaged was described in the mortgage as follows:

" All and singular, the following described rights, franchises, and property lying and being situate in the city of San Diego, and in the county of San Diego, state of California, viz.: Being the line of railway owned and controlled by the party of the first part in the city of San Diego, county of San Diego, and state of California, including the right of way, road-bed and superstructure, tracks, turn-tables, sidings, switches, cars, rolling-stock of any kind, machinery, fixtures, real and personal property of any and every kind and description, now owned by said party of the first part, and used or intended to be used in connection with or for the purposes of said railroad, incomes, issues, and profits arising or being received therefrom; also, all the franchises vested in said party of the first part, including its franchises to be a corporation, and also all franchises and property that may hereafter be acquired by said party of the first part for the purposes of its line of railway, all its branch lines and extensions, and all side tracks and switches that may be hereafter constructed; it being the true intent and purpose hereof to secure the payment of said hereinbefore described bonds and coupons, according to their tenor and effect, by charging with a lien for that purpose all the property of every kind and description that is now owned by said party of the first part for the purposes of its said lines of railway, and all such property as from time to time or at any time, during the existence of said bonds or the life of this mortgage, may be acquired by, or come into the possession of, said party of the first part, for use in connection with its line of railway, as herein set forth, and as authorized by its charter powers, granted to it by the state of California."

The bill containing allegations making such action proper, a receiver was duly appointed at the commencement of the suit to take possession of the property involved in it. To the bill the defendant company interposed no defense, but numerous parties,—some unsecured creditors, and some claiming to be legal holders of the bonds thus secured,—with leave of the court, intervened in the cause. Among the unsecured creditors so intervening were the present petitioners, C. J. Fox and the West Coast Lumber Company. A reference was made to the master to take the evidence in respect to the claims of the respective parties, and to report his findings of fact in the premises, with the names of the holders of the bonds, and the respective amounts thereof, together with the character and amount of all claims made against the defendant company. Upon the coming in of the master's report, and after a full hearing, the court held that none of the bonds in question ever were legally issued, or ever became valid outstanding obligations of the defendant corporation, and as a consequence that the bill was not well filed. But inas-

much as, pending the litigation, certificates had been issued by the receiver under the direction of the court to various persons for expenses necessarily incurred by him in the care, preservation, and operation of the property, and inasmuch as it appeared, both by the pleadings and the master's report, that the defendant company was wholly insolvent, and upon the request and consent of all of the parties in interest, the court determined to retain the cause for all purposes, and to direct a sale of all the property involved, and a disposition of the proceeds in accordance with the rights of the respective parties. Accordingly, it was agreed by all of the parties in interest that a final decree should be entered, confirming the report of the master, which ascertained and fixed the amounts of the respective claims, and directing a sale of the property to satisfy the same. The property so ordered to be sold was thus described in the decree:

"All the right, title, interest, and equity of the said defendant company, the San Diego Street-Car Company, in and to that certain line of railway of the said company lying and being in the city of San Diego, county of San Diego, and state of California, including the right of way, road-bed and superstructure, tracks, turn-tables, sidings, switches, cars, rolling stock of any kind, machinery, fixtures, real and personal property of any and every kind and description, owned and used or intended to be used in connection with or for the purposes of said railroad, and its franchises, branch lines and extensions, interests and properties, wherever situate, whether the same was in existence and owned or possessed by said defendant company at the time of the execution of said mortgage or deed of trust, or has been since acquired by said defendant company, or by the receivers herein appointed, or by either of them."

For several reasons, not now necessary to be stated, the court hesitated to sign the decree as prepared by counsel; and it was not only upon the consent, but only after the urgent request, of all of the parties in interest, including the present petitioners, and only after the decree was made to express such consent upon its face, that it was signed and entered of record. A sale of the property was subsequently made by the master to one A. B. Spreckles, which was, upon like consent of all of the parties in interest, confirmed by the court; but, all of the conditions of the sale not having been yet complied with, there has been no conveyance of the property to the purchaser. Subsequent to the confirmation of the sale, to-wit, on the 7th of December last, the aforesaid interveners, C. J. Fox and West Coast Lumber Company, filed in this court a verified petition setting forth that the petitioners are creditors of the defendant corporation, and that their respective demands were established as unsecured claims against the street-car company by the aforesaid final decree of this court; that on the 20th of November, 1891, the petitioner C. J. Fox reduced his demand, amounting to $2,117.80, to judgment, in one of the superior courts of the state, after personal service upon the defendant, and that on the 14th of October, 1891, the petitioner West Coast Lumber Company likewise reduced its demand, amounting to $6,168.20, to judgment, in the same state court, and that no part of either of said judgments has been paid; that petitioners are

informed and believe that the proceeds of the sale made by the master under the aforesaid final decree in this suit will be almost if not entirely exhausted by the application of the same to the costs of the court, the expenses of the receivership, and the preferred claims, as established by the decree, and that little or nothing of such proceeds will remain to be applied upon the unsecured claims, including those of the petitioners; that among the assets of the defendant corporation at the time of the filing of the bill of complaint herein, and at the time of the appointment of the original receiver, was certain personal property, consisting of steel street-railway rails, with fish-plates and bolts, of the value of $10,000, or thereabouts; that said rails, plates, and bolts were taken possession of by the original receiver herein appointed upon his construction of the order appointing him, and that upon his resignation the same were turned over to his successor; that at the time of the filing of the bill herein, and at all times thereafter, the rails were stacked upon a vacant lot near H street, in the city of San Diego, and outside of any right of way of the defendant company; that none of the rails, plates, or bolts ever formed any part of the track or structures of the defendant company, and that neither the whole nor any part thereof were ever in any way appurtenant to or connected with the defendant company's road; that the rails, plates, and bolts were never embraced by the mortgage to the complainant, nor formed any part of the subject-matter of the suit for its foreclosure; that the act of the receivers in taking and holding possession thereof was without authority, and upon a mistaken construction of the orders of the court; that the jurisdiction of this court at no time attached to the rails, plates, or bolts "to any extent beyond the fact that its said receivers took the actual possession of the same, and so removed the same beyond the reach of the process of the court in which the petitioners' said judgments have been rendered;" that said rails, plates, and bolts are not embraced by the decree of sale entered herein, and did not pass to the purchaser at the master's sale, but that the purchaser claims to have acquired title thereto thereby, and with the consent and aid of the receiver "is appropriating and about to appropriate the said rails to his own use by way of annexing the same to the street railway, the title to which passed under said master's sale to him, and, unless prevented by the order of the court, said purchaser will convert, under the protection and authority of the receiver, all of said rails to his own use and benefit." The prayer of the petition is that the court direct the receiver to return the possession of the rails, plates, and bolts to the defendant company, and relinquish all control over the same, "and for permission to these petitioners to proceed, as by law they may, with final process upon their said judgments in the court of the state, to subject the said assets of the said defendant to the satisfaction of said judgments, and for such other relief as may be meet and appropriate in the premises."

Accompanying this petition was an affidavit of J. B. Winship, setting forth, among other things, that he is the manager of the intervening West Coast Lumber Company; that on the 7th of December, 1888, one

J. C. Arnold, trustee, executed to E. S. Babcock, Jr., trustee for the San Diego Street-Car Company, a mortgage upon certain lots and blocks of land, to secure the payment of certain promissory notes given to the street-car company by the College Hill Land Association of San Diego, aggregating over $25,000, the whole of which, with interest, is still due and unpaid; that the real estate so mortgaged is worth the full amount due upon the notes; that the notes were given to the street-car company in consideration of that company building and operating that portion of its line known as the "Park Belt Motor Line;" that, as affiant is informed and believes, the notes and mortgage never came into the possession of the receiver, and were not included in the mortgage to the complainant, and were never sold by any order of this court, but are still a part of the assets of the defendant street-car company; that the notes and mortgage will become valueless as such assets "if the said rails are removed off of the Park Belt Motor Line, because the consideration thereof will then have failed." The affidavit also states substantially the same matters respecting the rails and the proceedings of the petitioners in the state court as are set forth in the petition.

On the 4th of January, 1892, the petitioners filed a supplemental petition, duly verified, in which it is stated that on the 10th and 24th days of November, 1891, respectively, petitioners caused execution to be issued upon the respective judgments they had obtained in the state court against the street-car company, and that in order to assert a prior lien upon the rails, plates, and bolts mentioned in their original petition, and in the hands of the receiver, "so far as the same have not already been delivered to A. B. Spreckles, and fixed in the track of another and different system of railway," they caused the executions to be levied as far as possible by serving them upon the receiver and upon the secretary of the defendant company, but that the sheriff holding the executions was expressly directed not to disturb the receiver's possession of the property, nor have the petitioners sought to subject the receiver to answer personally to the state court; that the sole object and purpose of those proceedings was to lay the foundation for the equitable interposition of this court, and that it might, by order, upon application to it, award the petitioners priority of lien upon said rails and material in the event it should be found that they were not embraced by the decree of this court. The supplemental petition further sets forth that among the assets of the street-car company are two certain notes, secured by mortgage, made to it by the College Hill Land Association of San Diego,—one for the sum of $12,850, dated November 24, 1888, and due 10 months after date, and the other for the sum of $12,800, dated November 24, 1888, and due 22 months after date; that to secure the payment of the notes, G. C. Arnold, trustee for the College Hill Land Association, executed to E. S. Babcock, Jr., as trustee for the street-car company, a mortgage upon a large number of lots and blocks in the city of San Diego; that petitioners caused writs of attachment to be issued out of the state court in their aforesaid actions against the street-car company, and to be served upon the College Hill Land Association and upon E. S. Babcock, Jr., in the manner provided

by law. The supplemental petition further states that the petitioners are informed and believe that the receiver claims to have taken possession of these notes and the mortgage by virtue of the order of this court, and that under the terms of the notice of the sale by the master, A. B. Spreckles, the purchaser at the sale, claims to have purchased said mortgage debt, by reason of all of which petitioners are prevented from enforcing final process on their judgments obtained in the state court. They allege that the notes and mortgage never constituted any portion of the subject-matter of the suit, and were never embraced by any issue tendered or made therein; that the act of the receiver in taking possession of the notes and mortgage was without authority, and was based upon a mistaken construction of the orders of this court; that the jurisdiction of this court at no time attached to the notes and mortgage to any extent "beyond the fact that its said receiver took the actual possession of the same, and so removed them beyond the final execution of the process of the court in which the petitioners' said judgments were rendered." The supplemental petition also contains the following:

"(3) Petitioners further represent that among the assets of the San Diego Street-Car Company are certain unpaid subscriptions to the capital stock of said corporation, and petitioners are not informed as to the full amount of all said unpaid subscriptions, but among said assets is the following: Petitioners allege that on January 9, 1890, a certain action was brought in the superior court of the county of San Diego, state of California, by W. E. Baines, as a judgment creditor for himself and all other creditors of the San Diego Street-Car Company, against the corporation and certain persons alleged to be stockholders therein, for the ascertainment of the amount due upon the capital stock of said corporation as unpaid subscriptions thereto, and for judgment against such stockholders for the amount due said corporation for unpaid subscriptions to said stock, with all proper relief; that such proceedings were had upon issues joined in said action; that on the 28th day of June, 1890, the said court found, among other things, that one E. S. Babcock, Jr., was indebted to said corporation in the sum of $48,600.00, that H. L. Story was indebted to said corporation in the sum of $21,275.00, that Josephus Collett was indebted to said corporation in the sum of $5,350.00, all upon their several unpaid stock subscriptions, and that judgment was duly given and made upon the findings in said cause; and it was further adjudged and decreed that the said cause be retained in the said court, and that any other judgment creditor of the said defendant corporation who should make proper showing to the said court of his right thereto be allowed to become a party to said action, establish his claim, and have execution, to the extent of such unpaid subscriptions, against the said Babcock, Story, and Collett; that your petitioners are entitled to come in and be made parties, and to have execution to collect their said judgments from the unpaid subscriptions, and they have an equitable lien upon said unpaid stock subscriptions; that, as petitioners are informed and believe, it is claimed on behalf of the receiver herein that the said unpaid stock subscriptions have been drawn within the jurisdiction of this court, and are now in the constructive possession and control of said receiver, subject to the orders of this court; that petitioners fear that they will be embarrassed in proceeding upon the judgment against said stockholders and other stockholders unless this court make an order construing the extent of the powers of said receiver, and limiting his possession so that the same does not include said unpaid stock subscriptions. Wherefore petitioners pray that the said rails and material be delivered to and placed in the hands of said sheriff of

San Diego county, to be sold under the petitioners' writs of execution, in order that the proceeds of the sale of the same might be appropriated, so far as necessary, to the satisfaction of petitioners' said judgments, or, if sold under the order of this court, that the proceeds be turned over to said sheriff to be applied on said judgments, or applied by the order of this court directly thereon, and for such other aid, remedy, and relief as the nature of the case may require, and law and equity may permit. And petitioners further pray that the receiver herein be directed to deliver to and place in the hands of the said sheriff of San Diego county, to be subjected to petitioners' said writs of execution, as provided by law, the said notes and mortgage, or, if the same be sold or collected under the orders of this court, that the proceeds, so far as necessary to satisfy petitioners' said judgments, be turned over to said sheriff, to be applied on said executions and judgments, or applied by the order of this court directly thereon, and for such other aid, remedy, and relief as may be lawful and equitable in the premises; that the court declare that its orders heretofore made, appointing said receiver, and ordering the property of. said defendant to be sold, do not comprehend the unpaid stock subscriptions due to said defendant as above set forth."

Annexed to and made a part of the supplemental petition is an affidavit of H. L. Story, who deposes that, at the time the defendant company purchased the rails in question, he was the president of the corporation; that the rails were purchased for the purpose of making extensions of the railway system of the street-car company; that none of them have been used for any purpose, except an extension made upon First street, and a double track on Fifth and D streets, and the crossings between Fourth and Sixth streets on H street, also on Santa Fe wharf; that they "have never been used in connection with the said San Diego Street-Car Railway."

Upon the filing of the original petition the court made an order directing cause to be shown why the petition should not be granted; and thereafter, and after the filing of the supplemental petition, the receiver filed the following as an answer to the petition, and by way of return to the order to show cause:

"The undersigned, Joseph A. Flint, the receiver appointed in this cause, for answer to the petition of C. J. Fox and the West Coast Lumber Company, creditors and interveners herein, and by way of return to the order of this court to show cause why said petition should not be granted, respectfully showeth: (1) That the property mentioned and described in said petition was at the time the mortgage sued on in this action was executed, and continued to be until the sale thereof to A. B. Spreckels by the master in chancery appointed in this case, the property of, and owned by, the San Diego Street-Car Company. (2) That said property was purchased by said company for the purpose of repairing and extending its line of street and motor road covered by its mortgage given to the plaintiff and sued on in this action, and was included in the property described in said mortgage, and covered thereby. (3) That, immediately upon the appointment of Milton Santee as receiver herein, he caused to be made and filed in this court a full and complete inventory of the property of the said street-car company, including all of the property described in the said petition of C. J. Fox and the West Coast Lumber Company. (4) That Oscar A. Trippett, who now appears as the solicitor of said petitioners, was their solicitor from the time of their intervention or the filing of their claims in this action, and as such had full knowledge of the foregoing facts. (5) That knowing said facts, and that the bonds which were

the foundation of this suit had been held by this court to be void, and that the plaintiff herein could not recover, for that reason, the said Oscar A. Trippett, acting for said creditors, the present petitioners, joined with the other creditors, and consented to a decree being entered in favor of all of the creditors, and against said defendant street-car company, ordering and decreeing the sale of all of the property of said company for the satisfaction of the claims of all of said creditors in the order in which they were entitled to payment; and such decree was entered accordingly. (6) That said consent was given and decree entered with the full understanding of all of the said creditors that said street-car company was insolvent, and unable to pay its debts in full, and the consent to the rendition of said decree was made and given with the view and for the purpose of winding up the affairs of said company, in so far as the same could be done by this court, and of applying all of its property to the payment of its said debts with the least expense possible; and to avoid further litigation and expense in the state courts. (7) That the property covered by said mortgage was described therein as follows: ' All and singular, the following described rights, franchises, and property lying and being situate in the city of San Diego, county of San Diego, state of California, to-wit: Being the line of railway owned and controlled by the party of the first part [San Diego Street-Car Company] in the city of San Diego, county of San Diego, state of California, including the right of way, road-bed and superstructures, tracks, turn-tables, sidings, switches, cars, rolling stock of every kind, machinery, fixtures, real and personal property of every kind and description, now owned by the said party of the first part, [San Diego Street-Car Co.,] and used or intended to be used in connection with or for the purposes of said railroad, incomes and profits arising or being received therefrom; also, all the franchises vested in the said party of the first part, [San Diego Street-Car Co.,] including its franchise to be a corporation; and also all franchises and property that may hereafter be acquired by said party of the first part [San Diego Street-Car Co.] for the purposes of its line of railway, all its branch lines, extensions, and all side tracks and switches that may be hereafter constructed; it being the true intent and purpose hereof to secure the said hereinbefore described bonds and coupons, according to their tenor and effect, by charging with a lien for that purpose all the property of every kind and description that is now owned by the said party of the first part [San Diego Street-Car Company] for purposes of its said line of railway, and all such property as from time to time, during the existence of said bonds or the life of this mortgage, may be acquired by or come into the possession of the said party of the first part [San Diego Street-Car Company] for use in connection with its line of railway as herein set forth, and as authorized by its charter powers granted to it by the state of California.' (8) That the decree of this court ordering the sale of this property, the notice of such sale, and all proceedings subsequent thereto, resulting in the confirmation of said sale, described the property to be sold, and sold, as the same was described in said mortgage. (9) That notwithstanding the entry of said decree, the consent to the entry thereof, the purpose for which such consent was given, the subsequent sale thereunder, and the confirmation thereof, the petitioners, through their said solicitor, who consented to said decree, have, in violation of the terms of said decree and the rights of other creditors, as well as of the purchaser under said decree, attempted to reach said property under the process of the state courts, and to that end have, since the filing of their petition in this court and the making of the temporary order thereunder, at their instance, caused execution to issue from the state court against said street-car company, and had the same levied upon the property in controversy in this proceeding. (10) That the petitioners, as this respondent is informed and believes, during this whole litigation, had full knowledge of the existence of the property now

in controversy, but during the pendency of the suit made no objection to the mortgage as affecting the same on the grounds now set up in their petition, but stood by and allowed the decree for its sale to be made, and consented thereto, and are now, for the first time, attempting to gain an unfair advantage of the purchaser, and an unfair and unjust precedence over other creditors, by procuring the release of this property from the effect of the decree and sale, so that their execution lien may first attach."

Accompanying this answer was an affidavit of the solicitor for the complainant, setting forth, among other things, that the draft of the decree herein was prepared by him and submitted to the counsel for the respective parties in interest, and after certain amendments was engrossed, with the full knowledge and consent of said counsel, and as so engrossed was presented to the court as and for a consent decree, and as such was signed, filed, and recorded; "that A. Haines, Esq., appeared and acted in the said final settlement of this form of the decree for the clients of Oscar Trippett, Esq., [the petitioners,] and so stated in open court; that it was the intention of all parties concerned in the preparation of the said decree, in the form in which the same was presented to the court and is now entered and recorded, to embrace within its operation all the property of the defendant company, personal as well as real; and that the said decree was read in open court, A. Haines, Esq., being present, acting for Oscar Trippett, Esq., and his clients, as well as others, and stating in open court that he was authorized by Mr. Trippett to give such consent."

So far as the rails, fish-plates, and bolts are concerned, they were clearly covered by the mortgage, and constituted a part of the subject-matter of the suit embraced by the complainants' bill. The circumstance that they had not been actually used, and that they were not stacked within the defendant company's right of way, is wholly immaterial. They were purchased to be used in the extension of the company's road, and came within the express terms of the mortgage, which included all real and personal property, of every kind and description, "used or intended to be used in connection with or for the purposes of said railroad." They were rightly taken possession of by the receiver under the order of this court, and came clearly within the decree directing a sale of the property.

In respect to the notes executed to the street-car company by the College Hill Land Association, and the mortgage securing them, the same, I think, cannot be said. But none of the property of the defendant company was decreed to be sold by virtue of the mortgage. On the contrary, the court held that the bonds for which the mortgage was given as security were invalid, and as a consequence, of course, that none of the property could be sold by virtue of the mortgage. But at the time of this decision all of the property covered by the mortgage was in the hands of the receiver appointed by the court. It is now, for the first time, brought to the notice of the court that the notes executed to the defendant company by the College Hill Land Association, together with the mortgage securing them, were likewise then in the hands of the re-

ceiver, although they were set out in the inventory, returned by the receiver first appointed, of the property taken possession of by him under the order of the court.    This was the condition of the property in question when all of the parties in interest, including the present petitioners, agreed upon a decree confirming the report of the master, which, as has been said, ascertained and fixed the amounts of the respective claims, and ordering the sale of all of the property of the defendant company to satisfy the same.    This was undoubtedly done because all of the parties in interest were parties to the suit; all of the property of the defendant company, which was insufficient to pay the creditors in full, was supposed to be in the hands of the receiver of the court; it was necessary that the court should retain the cause for the purpose of paying the receiver's certificates issued for the protection of the property pending the litigation; and it was therefore deemed advisable by all of the parties in interest to have the whole matter disposed of in this court, thereby avoiding the unnecessary expense of again litigating their respective claims.    Under such circumstances, for this court to release its control of the notes and mortgage in question in order that they may be subjected to the process obtained by the petitioners out of the state court, or for this court to award petitioners priority of lien by reason of their proceedings in the state court, would be to give them an unconscionable advantage over the other creditors of the defendant street-car company, who acted upon the petitioners' consent to the entry of the decree in this court, and who have, so far as appears, taken no action in the state courts for the protection or enforcement of their demands.    The order appointing the receiver, and directing him to take possession of the property involved in the suit, evidently proceeded upon the theory that the defendant company had no other property than that covered by the mortgage. It was undoubtedly illegal in the receiver to take possession of any property not so covered; for the bill was filed to foreclose the mortgage executed to the complainant, and the order appointing the receiver, and directing him to take possession of the property of the defendant, was legally applicable only to the property embraced by the bill.    But the notes and mortgage in question having been brought into the custody of this court under color of its authority, although illegally, the court has jurisdiction to decide all conflicting rights thereto; all parties in interest being parties to the suit.    This conclusion is, I think, justified and sustained by the decision of the supreme court in the case of *Gumbel* v. *Pitkin*, 124 U. S. 131, 8 Sup. Ct. Rep. 379.    There it appeared that the marshal had taken possession of a certain stock of goods of one Dreyfus on Sunday, under color of process issued the same day, at the suit in the circuit court of certain of his creditors.    Gumbel, another creditor of Dreyfus, commenced suit against him in one of the state courts, and procured an attachment to be issued and placed in the hands of the sheriff, who was prevented by the marshal's possession from making an actual levy on the goods of the attachment held by him.    The supreme court held that, though the taking of the goods by the marshal was illegal,—the writ under which he acted having been illegally issued

and levied,—they were taken under color of its authority, and the circuit court therefore acquired jurisdiction by virtue of the seizure to decide all questions concerning the property, and should have done complete justice between the parties by enforcing their equitable rights. So here, I think that the notes and mortgage in question, having been taken possession of by the receiver under the order of this court purporting to authorize him to take possession of all of the property of the defendant company, were taken by that officer under color of authority, and the court therefore acquired jurisdiction over it; and, all the parties interested therein being before the court as parties to the suit, it became the duty of the court to dispose of the property in accordance with their equitable rights. Those rights are fixed by the order of the court, entered by the consent of all of the parties in interest, including the petitioners, confirming the report of the master, which ascertained the amounts and order of priority of the claims of the respective parties. The notes and mortgage now in question not having been embraced by the decree of sale already made, there must be a supplemental decree directing a sale of the notes and mortgage, and a disposition of the proceeds thereof in accordance with the rights of the respective parties as fixed by the agreed order and decree. In respect to the stock subscriptions, referred to in the supplemental petition, nothing more need be said than that it is a matter over which this court never acquired any jurisdiction, and with which it is therefore in no way concerned. Petitions denied, and counsel will prepare a supplemental decree in accordance with the views above expressed.