### SYRACUSE TP., HAMILTON COUNTY, KAN., v. ROLLINS.

(Circuit Court of Appeals, Eighth Circuit. October 29, 1900.)

#### No. 1,360.

**1. APPEAL AND ERROR—REVIEW—FINDINGS OF FACT.**
The sufficiency of the evidence to support special findings of fact made by a circuit court cannot be reviewed on a writ of error.

**2. MUNICIPAL BONDS—DEFENSES—ESTOPPEL BY RECITALS.**
A municipal corporation cannot attack the validity of negotiable bonds issued by it in the hands of bona fide purchasers for value on the ground that the records do not show a proper and legal canvass of the votes cast at the election called to determine whether such bonds should be issued, where the bonds recite the performance of all required conditions precedent to their issuance. Even if the recitals could be contradicted, it could only be by showing the nonassent of the voters, and not merely formal omissions.

**3. SAME—VALIDITY.**
That municipal bonds which were to run 10 years are made payable more than 10 years after their date does not affect their validity where they were not actually issued until within 10 years prior to their maturity.

4. TRIAL—ERRONEOUS ENTRY OF FINDINGS—POWER TO CORRECT RECORD.
    That what purported to be the findings of the court in a case, but were
    not in fact such findings, were inadvertently entered of record, did not
    preclude the court from setting them aside when the error was discovered,
    or deprive it of jurisdiction to proceed with the consideration of the case
    as though they had not been entered.

## In Error to the Circuit Court of the United States for the District of Kansas.

The trial court made a special finding of facts which supersedes the necessity of any other statement of the case. The court's findings are as follows:

"(1) That the plaintiff is a resident and citizen of the state of New Hampshire.

"(2) That the defendant is a resident and citizen of the state of Kansas, and a municipal township and body corporate, in the county of Hamilton and state of Kansas, duly organized and existing under the laws of Kansas. and possessed the power and authority as such to issue the bonds and coupons in suit, to contract and be contracted with, to sue and be sued, and do all other acts and things necessary and convenient for the exercise of its corporate powers.

"(3) That the plaintiff herein filed his petition and began this action on the 25th day of August, 1897, and that the defendant has been duly served with process, filed its answer, and made a general appearance herein; and that the matter in dispute and in controversy in this action, exclusive of interest and costs, exceeds the sum and value of $2,000.

"(4) That the defendant duly issued, executed, and delivered the bonds and coupons in suit, being bonds of the face value of $4,500, being forty-five bonds for $100 each, with interest thereon at 8 per cent. per annum, payable semi-annually, as evidenced by interest coupons attached to each of said bonds, all of said bonds and coupons bearing date the 1st day of June, 1887, which bonds were due, and payable to bearer at the fiscal agency of the state of Kansas in the city of New York on the 1st day of July, A. D. 1897, on presentation of the same; as also said coupons were payable at the same place on presentation as they respectively became due.

"(5) That each of the bonds in suit is negotiable in form, and payable to bearer, and recites on its face the following: 'This bond was issued in accordance with the provision of an act of the legislature of the state of Kansas entitled "An act amendatory of and supplemental to chapter sixty-eight of the Session Laws of 1872 entitled 'An act to authorize counties, incorporated cities and municipal townships to issue bonds for the purpose of building bridges, aiding in the construction of railroads, water-power or other works of internal improvement and providing for the registration of such bonds, the registration of other bonds, and the repealing of all laws in conflict therewith, and to repeal chapter 29 of the Session Laws of 1869, and to provide for the issuing of railroad and other bonds, and to limit the issuing of school bonds, and to punish the officers herein named for a violation of the provisions of this act,' approved March 9, 1874." And it is hereby certified and recited that all acts, conditions, and things required to be done precedent to and in issuing of said bonds have been properly done, happened, and performed in regular and due form as required by law.'

"(6) That the bonds in suit were duly presented to the auditor of the state of Kansas, and by him duly registered, as provided by law; and said auditor, under his seal of office, duly certified upon each of said bonds that it had been regularly and legally issued, and that the signatures thereto were genuine, and that the same were registered in his office according to law on the 12th day of August, 1887, and within thirty days after said bonds had been delivered.

"(7) That on or about the 25th day of March, 1887, a petition signed by about one hundred and sixty voters of said Syracuse township, the same being more than two-fifths of the voters of said township, was duly presented to the trustee, clerk, and treasurer of said Syracuse township, they being the township board of said township of Syracuse, asking that a special election be called and ordered, and a vote be taken upon the question as to 'whether bonds shall be issued whose face value shall be $5,200 with which to secure for the public

a free bridge over the Arkansas river, beginning at the N. W. corner of lot number two, section number eighteen, township number twenty-four, and range forty, and terminating on the opposite bank of said river.'

"(8) That on the 25th day of March, 1887, the township board of said township of Syracuse, as aforesaid, after consideration of said petition, ordered a special election to be held in said township on the 26th day of April, 1887, for the purpose of 'determining whether the proposition to purchase the bridge now spanning the Arkansas river at the N. W. corner of lot number two, section eighteen, township twenty-four, range forty, and terminating on the opposite bank of said river, and issue the bonds of said Syracuse township, whose face value shall be $5,200.00 in payment for said bridge.' That due notice of such election by publication was given as provided by law, and said election was duly held in said township in pursuance of said order and notice on the 26th day of April, 1887; at which election one hundred and seventeen legal votes were cast in favor of said proposition and the issuance of said bonds, the same being more than three-fifths of the votes cast at such election, and which was unanimous, there being no votes cast against said proposition and against the issuance of said bonds at said election.

"(9) That the judges and clerks of said election, they being the election board, duly conducted said election, received the votes, and counted and returned the same as provided by law; and said election and votes and return were duly canvassed, and the result of said election declared in favor of the issuing of said bonds as provided by law, by the township board at a meeting at which W. H. Olmsted and H. W. Stillhamer, treasurer and trustee, were present, the record not showing that the clerk was present.

"(10) That the officers of said township of Syracuse at a regular township board meeting on the 20th day of July, 1887, duly issued the bonds and coupons in suit, the bonds being forty-five in number, of the face value of $100 each; said township of Syracuse and the officers thereof having been enjoined, and judgment rendered in an action brought for that purpose, from issuing more than $4,500 face value of said bonds, because it was alleged that such excess was more than 5 per cent. value of the taxable property of said township of Syracuse, and said $4,500 face value of said bonds, being not greater than 5 per cent., inclusive of all other bonded indebtedness, of the taxable property of such township; and said injunction judgment is still in full force and effect.

"(11) That said bonds so issued as aforesaid were duly and legally registered by the officers of said township in the book kept for that purpose, and the township officers of said township of Syracuse at the time of issuing said bonds duly made out and transmitted to the auditor of the state of Kansas a certified statement of the number, amount, and character of the bonds so issued, as provided by law, which statement was duly attested by the clerk of said township, and the corporate seal of said township attached thereto.

"(12) That within thirty days after the delivery of the bonds in suit the same were duly presented to the auditor of the state of Kansas for registration, and said auditor of state duly registered the same in his office in a book kept for that purpose, and under his seal of office certified in writing upon each of said bonds that it had been regularly and legally issued, that the signatures thereto were genuine, and that the same was registered in his office according to law on the 12th day of August, 1887.

"(13) That the bonds and coupons sued on in this action were issued and delivered in payment for a bridge spanning the Arkansas river in said Syracuse township, Hamilton county, state of Kansas, and sold to the defendant by one James H. Bullen; that said bridge was received by said defendant in payment of said bonds about July 30, 1887, since which time the defendant has owned, and the citizens of said township have used and enjoyed, and still use and enjoy, said bridge, and have participated in all the benefits and advantages attending such ownership and use.

"(14) That shortly after the issuance and registration of said bonds, and before they, or any of them, or any installment of interest became or was due thereon, or any of said coupons became due, the plaintiff in good faith, for a valuable consideration, in the usual course of business, and relying upon the facts as recited therein, and the registration indorsed thereon, as aforesaid, and without any notice of any defect in the preliminary proceedings or require-

ments in the issuance or execution thereof, purchased said bonds and coupons, and is now the holder and owner of the bonds and coupons in suit in good faith. And that the defendant during each year after the issuance of said bonds up to the year 1897 levied and caused to be collected of the taxpayers of said township of Syracuse taxes for the purpose of paying the interest on said bonds as evidenced by coupons thereto attached as such coupons respectively became due, and paid all and singular said interest, except the last two installments or coupons falling due on the 1st day of January and of July, 1897, and sued on herein.

"(15) That there is due the plaintiff from the defendant on and on account of the bonds and coupons sued on herein the sum of $5,619.06."

George Getty, for plaintiff in error.

A. B. Jetmore and A. P. Jetmore, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Six of the assignments of error are to the effect that the facts found by the trial court are not supported by the evidence. But it is well settled that when the trial court to which a cause has been submitted makes a special finding of facts this court has no authority to inquire whether the evidence supports the findings, but only whether the facts found support the judgment. Lehnen v. Dickson, 148 U. S. 71, 77, 13 Sup. Ct. 481, 37 L. Ed. 373; Myers v. Hettinger, 37 C. C. A. 369, 94 Fed. 370; Supreme Lodge v. England, 36 C. C. A. 298, 94 Fed. 369; Minchen v. Hart, 36 U. S. App. 534, 18 C. C. A. 570, 72 Fed. 294; Hill v. Woodbury, 4 U. S. App. 68, 1 C. C. A. 206, 49 Fed. 138.

It is assigned for error that "no lawful canvass had been made by the board of county commissioners, or by any one, of any election held for the purpose of issuing the bonds in suit." The eighth and ninth findings of fact distinctly state that the election was held; that the vote was unanimous in favor of a proposition to issue the bonds, there being 117 votes in favor of it and none against it; and "that the judges and clerks of said election, they being the election board, duly conducted said election, received the votes, and counted and returned the same as provided by law, and said election and votes and return were duly canvassed, and the result of said election declared in favor of the issuing of said bonds as provided by law, by the township board at a meeting at which W. H. Olmsted and H. W. Stillhamer, treasurer and trustee, were present, the record not showing that the clerk was present." This assignment cannot prevail in the face of these findings. Moreover, under our decisions the recitals in the bonds preclude the defendant from raising this question. Brown v. Ingalls Tp., 57 U. S. App. 611, 30 C. C. A. 27, 86 Fed. 261. In the case last cited it was distinctly held by the court that it is the fact of the assent of the voters, and not the certificate of that fact, or the canvass of the vote, which confers the right to issue the bonds.

It is next assigned for error "that the bonds run for a longer period than that specified in the petition presented to the township board asking for the election." The recitals in the bonds are a com-

104 F.—61

plete answer to this objection. Moreover, it is shown to be without foundation in fact by the special finding of facts. The bonds were to run 10 years. They were payable on the 1st day of July, 1897, and, though they bear date the 1st day of June, 1887, the court finds they were not issued until the 20th day of July, 1887, so that they matured in a little less than 10 years from the date of their issue, which is the date from which to compute the time they had to run. They became binding obligations on the township from the date of their issue only. City of South St. Paul v. Lamprecht Bros. Co., 31 C. C. A. 585, 88 Fed. 449, 455.

Another assignment of error is "that the sum appropriated for the issuance of said bonds was in excess of the sum which could be appropriated by a township in the construction and purchase of a bridge." It is not very clear what is meant by this assignment. In appellant's brief it is treated in a double aspect: First, as raising the question that the bonds voted were in excess of 5 per cent. of the value of the taxable property of the township; and, second, as raising the question that the township could not, under the laws of Kansas, purchase a bridge costing more than $200. Conceding both of these points to be properly raised, they are without merit. The amount of bonds voted for the purchase of the bridge was slightly in excess of the 5 per cent. limit, but as to this excess the township officers were enjoined from issuing bonds, and the bonds actually issued were not in excess of 5 per cent. of the value of the taxable property of the township. See eleventh special finding. At the time the bonds in suit were voted and issued, we understand, from the brief of counsel, that chapter 68 of the Session Laws of 1872, found in chapter 12a, Gen. St. Kan. 1889, was in force. Section 1 of that act provides:

"The board of county commissioners of any county, the mayor, and common council of an incorporated city, and the trustee, clerk and treasurer of any municipal township in this state are hereby empowered to issue the bonds of such county, city or township, in any sum not greater than five per cent., inclusive of all other bonded indebtedness, of the taxable property of such county, city or township, for the purpose of building or purchasing bridges, free or otherwise, * * *."

It will be observed that the only limitation imposed on the power of a township to issue bonds for the purpose of building or purchasing bridges is that the amount shall not be greater than 5 per centum, inclusive of all other bonded indebtedness, of the taxable property of the township. The validity of the bonds was not affected by legislation subsequent to their issue.

It appears from the record that, after the cause was duly submitted to the court, what purported to be findings of fact and conclusions of law of the court in the cause inadvertently found their way onto the record. Subsequently, when the error was discovered, the court entered the following order:

"The findings of law and fact and order heretofore made in the above-entitled cause, and filed on the 2d day of December, 1898, are hereby set aside for the reason that the same were inadvertently filed and entered. The attorneys for the plaintiff and the defendant are allowed until the second day of the

next term of court to submit special findings of fact and conclusions of law for the consideration of the court."

The parties did submit special findings of fact and conclusions of law to the court in pursuance of the leave given them in this order. It is now for the first time objected that when the order which we have quoted setting aside the findings of fact inadvertently filed was entered, the court could not proceed further to consider the case "without a new waiver of a jury and a new trial and submission of the cause"; but there had been no trial of the cause in the sense that the court had reached a final judgment therein. The findings of fact and conclusions of law which found their way upon the records are shown to have been inadvertently entered of record, and not to express the judgment of the court in the case. For that reason the court very properly set them aside, and continued to consider the case upon the proofs submitted at the trial. No suggestion was made that it had lost jurisdiction to try the case, or that a new agreement to try the case before the court was necessary, but both parties acted on the assumption, supported by the record, that the trial of the case had not been completed by any finding or judgment of the court, and that it was still before the court on the original submission and the testimony heard at that time. In view of these facts, the suggestion that the court had lost jurisdiction to try the case, and that its judgment is erroneous for that reason, cannot be entertained.

The writer of this opinion has not heretofore concurred in the very extended and sweeping operation and effect given to recitals in municipal bonds by the majority of this court; but the views of this court are very little in advance of the recent decisions of the supreme court of the United States (Commissioners v. Rollins, 173 U. S. 255, 19 Sup. Ct. 390, 43 L. Ed. 689), and as a law-abiding citizen the writer acquiesces in these decisions, though he does not believe in the doctrine to the extent to which it has been carried, and which compels municipal corporations to pay bonds issued illegally, fraudulently, and without consideration because a rascally officer inserts a false recital in them. It is a gratifying fact that this case presents none of the odious features which often characterize the issue of municipal bonds. Here the bonds voted by the people were honestly applied by the officers of the township to the purpose for which they were voted. The people of the township got just what they voted for, and for a less price than they were willing to pay for it, and have had the use and enjoyment of the property from the date of its purchase. Interest was paid on the bonds for nine years, and the effort to repudiate them at this late day is, upon the facts found by the circuit court, without legal or moral merit. The judgment of the circuit court is affirmed.