### WRIGHT v. EAST RIVERSIDE IRR. DIST.

(Circuit Court of Appeals, Ninth Circuit. May 29, 1905.)

No. 1,159.

1. PUBLIC CORPORATIONS—IRRIGATION DISTRICTS—BONDS—BONA FIDE PURCHASERS—NOTICE.

Bona fide purchasers of public corporate bonds take with notice of the law under which the bonds were issued, and cannot recover thereon if the bonds show on their face that they were not issued in conformity thereto.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 1968.]

2. SAME—DEFECTS—SIGNATURE—DATE.

Wright Act (St. Cal. 1887, p. 35, c. 34) § 15, authorized the issuance of bonds by an irrigation district pursuant to an election, payable in yearly installments after 11 years, with interest coupons attached, requiring that the bonds should be negotiable in form, signed by the president and secretary of the irrigation district, and that they should be numbered consecutively as issued, and bear date at the time of issue; that the interest coupons should also be attached to each bond, and be signed by the secretary. Bonds were prepared under this act dated December 30, 1890, the coupons containing the lithographed name of the secretary of the district in office at that time. The bonds were not delivered until 18 months after the date specified, but the date was not changed, and, the secretary whose name was lithographed on the coupons having died, the bonds were signed by his successor, who was secretary when the bonds were delivered, but the lithographed signature of the preceding secretary on the coupons was not changed. *Held* that, whether the bonds were treated as "issued" on the day they bore date or on the day they were delivered, they were void in the first case because they were not signed by the "then secretary," as required by the statute, and in the second case because they were antedated, the effect of which was to make them payable within a shorter time than that provided by law.

Gilbert, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Southern District of California.

This was an action at law upon certain interest coupons held by the plaintiff in error, which were originally attached to bonds issued by the East Riverside Irrigation District, the defendant in error. The complaint alleges

that the defendant in error is, and was at all of the times therein mentioned, an irrigation district, organized and existing under and by virtue of an act of the Legislature of the state of California entitled "An act to provide for the organization and government of irrigation districts, and to provide for the acquisition of water and other property, and for the distribution of water for irrigation purposes," approved March 7, 1887 (St. Cal. 1887, p. 29, c. 34), commonly known as the "Wright Act," under which act, and the several acts amendatory thereof and supplemental thereto, the defendant in error issued certain bonds, specifically set out in the complaint, signed by Henry W. Robinson as president of the board of directors of the district, and by W. R. McCully as secretary; attached to each of which bonds at the time of the issuance thereof, according to the averments of the complaint, were the interest coupons sued upon, with the name "J. A. Van Arsdale, Secretary," at the end thereof. The complaint alleges that at the time of the issuance of the said respective bonds, with the coupons attached, Henry W. Robinson was the president of the defendant irrigation district, and W. R. McCully was its secretary, and that each of the said bonds was signed by the said Robinson and McCully as such president and secretary, respectively, and that the signature appearing upon each of the coupons sued upon is the signature of the secretary of the said irrigation district. All of the bonds and coupons set out in the complaint bear date December 30, 1890, and it is alleged in the complaint that subsequent to their issue, and prior to the 1st day of July, 1901, the plaintiff purchased the coupons sued upon, and ever since has been the owner thereof; that such interest coupons were presented to the treasurer of the district, and offered to be surrendered on payment of the sum of money mentioned therein, but that no payment thereon has been made, and that the whole thereof remains due and unpaid.

In its answer the defendant admits the issuance of the bonds with the interest coupons annexed, but denies that they were issued in pursuance of the provisions of the statute referred to, and alleges that they were issued in violation of that statute in these particulars: That the bonds had attached to them installment coupons in addition to the interest coupons, which installment coupons provided that the installments of principal should be paid as provided therein, and only upon the surrender of the respective installment coupons, and that by the terms of such installment coupons the time of payment for every such installment was extended beyond the time prescribed by the statute; that none of the coupons, either of installments or of interest, were signed by the person who was secretary at the time the bonds were issued or at the time the bonds were signed or executed; that none of the bonds or coupons bore the date of their issue, but that all of them bear date more than one year previous to the time of their issue, and to such extent are made payable in a shorter time than is prescribed by the statute under which they purport to be issued; that none of the bonds had affixed thereto the seal of the board of directors of the defendant corporation, and that they were not negotiable in form, and that all of them were disposed of illegally, and for an illegal consideration; that the plaintiff took the coupons sued upon with notice of all of the alleged defects; and that such coupons, as well as the bonds to which they were attached, were and are void for the reasons stated in the answer.

No question is made in respect to the organization of the defendant under the statute referred to, nor as to the regularity of the election authorizing an issue of bonds.

The cause was submitted to the court below upon an agreed statement of facts, upon which the court made findings of fact in accordance therewith, and, holding the coupons sued upon void and of no effect, gave judgment for the defendant. The findings are to the effect:

(1) That the plaintiff is a subject of Edward VII, King of Great Britain and Ireland, and is, and has been since a time prior to July 1, 1901, the owner and holder of the coupons particularly described in the complaint, and numbered 13, 14, 15, 16, 17, 18, 19, and 20, and belonging to bond No. 305, issued by the defendant corporation, and of the coupons bearing the same numbers, but belonging, respectively, to bonds issued by the defendant, and numbered 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 318, 319, 320, 321,

322, 323, 324, 325, 326, 327, 328, 329, 330, 331, 332, 334, and 335; making in all 240 coupons, each for $15, or a total of $3,600. That the date of maturity of the coupons numbered 13 is July 1, 1897; of coupons numbered 14, January 1, 1898; of coupons numbered 15, July 1, 1898; of coupons numbered 16, January 1, 1899; of coupons numbered 17, July 1, 1899; of coupons numbered 18, January 1, 1900; of coupons numbered 19, July 1, 1900; and of coupons numbered 20, January 1, 1901.

(2) That each of the said interest coupons was, before the commencement of the action, duly and regularly presented to the treasurer of the defendant district, and offered to be surrendered on the payment of the sum of money therein mentioned, no part of which has been paid.

(3) That the defendant is, and at all of the times mentioned in the record was, an irrigation district, organized and existing under and by virtue of the act of March 7, 1887, and the several acts amendatory thereof and supplemental thereto. That the said East Riverside Irrigation District was formerly situated in San Bernardino county, but is now partly in that county and partly in the county of Riverside, Cal.

(4) That heretofore (date not stated) the defendant district issued a bond in the following words and figures:

"Bond No. 305.

"State of California.                                        United States of America.

"$500.                            Bond of the                            $500.

"East Riverside Irrigation District.

"Total Issue, $250,000.                                        Located in
                                                    "San Bernardino Co. Cal.

"For Value Received

"The East Riverside Irrigation District, a public corporation, duly organized and existing under and pursuant to the laws of the State of California, promises to pay to the bearer hereof, at the office of the treasurer of said district, the sum of ($500) five hundred dollars in gold coin of the United States, at the dates and upon installments as follows: at the expiration of eleven years from date five (5) per cent of said sum; at the expiration of twelve years from date six (6) per cent of said sum; at the expiration of thirteen years from date seven (7) per cent of said sum; at the expiration of fourteen years from date eight (8) per cent of said sum; at the expiration of fifteen years from date nine (9) per cent of said sum; at the expiration of sixteen years from date ten (10) per cent of said sum; at the expiration of seventeen years from date eleven (11) per cent of said sum; at the expiration of eighteen years from date thirteen (13) per cent of said sum; at the expiration of nineteen years from date fifteen (15) per cent of said sum; at the expiration of twenty years from date a percentage sufficient to pay off said sum in full.

"Said installments are to be paid as provided in and only upon the surrender of the respective installment coupons, hereto attached. And said district promises to pay interest on the said principal at the rate of six (6) per cent per annum, payable in gold coin of the United States at the office of the treasurer of said district semi-annually, on the first day of January and July of each year, upon the surrender of the respective interest coupons hereto attached. Both principal and interest are payable at par.

"This bond is one of a series of bonds amounting in the aggregate to two hundred and fifty thousand dollars caused to be issued by the board of directors of said East Riverside Irrigation District, and pursuant to a vote of the electors of said district at an election held for that purpose on the 24th day of December, 1890. The said series, of which this bond is one, is composed of five hundred bonds, each of the denomination of five hundred dollars, and said bonds are issued by the authority of, pursuant to, and after a full compliance with all the requirements of the act of the Legislature of the State of California, entitled 'An act to provide for the organization and government of irrigation districts and to provide for the acquisition of water and other property, and for the distribution of water thereby for irrigation purposes,' approved March 7th, 1887, and acts amendatory and supplementary thereto.

"All the said bonds and the interest thereon are to be paid by revenue derived from the annual tax upon the real property of the District, which tax is, and the said bonds are by said act of the Legislature made a lien upon all said real property.

"In witness whereof said East Riverside Irrigation District has caused these bonds to be issued and signed by its president and secretary, and its corporate seal to be hereunto affixed and the lithographed signature of its secretary to be affixed to each of said coupons at the office of the Board of Directors in said District this 30th day of December, A. D. 1890.

"East Riverside Irrigation District.

"By W. R. McCully,                         By Henry W. Robinson,
"Secretary of Said Board.                    President of Said Board.

"$500."

That said bond was and is indorsed as follows:

"No. 305. State of California. East Riverside Irrigation District. $500. Six per cent Gold Bond. December 30th, 1890. Interest payable semi-annually. January first and July first at the office of the Treasurer at East Riverside, San Bernardino County, Cal."

That attached to said bond at the time of the delivery thereof was a coupon for interest, numbered 13, which coupon was and is in the words and figures following:

"$15.00.                                    Interest Coupon No. 13.

"East Riverside Irrigation District.

"Will pay to the bearer at the office of the Treasurer of said District in the County of San Bernardino, State of California, on the first day of July, 1897, on surrender of this coupon the sum of fifteen dollars in U. S. Gold Coin, being semi-annual interest on Bond

"No. 305.                          J. A. Van Arsdale, Secretary.
"Dated December 30th, 1890."

That at the time of the execution of the said bond and the delivery thereof, with the coupons attached thereto, as afterwards mentioned, Henry W. Robinson was the president of the said irrigation district, and W. R. McCully was its secretary, and that the signatures on said bond were and are the signatures of Henry W. Robinson as such president and said W. R. McCully as such secretary, but that the word "bond," as last above used, does not include "coupon." That each of the bonds referred to in the complaint were and are in the same form and of the same tenor and effect as the bond set out in the findings, with the exception of the number thereof; and that all of the coupons mentioned in the complaint and referred to in the findings were and are of the same form, tenor, and effect as the coupon last described, differing only in the date when the interest mentioned therein would become payable and in the number of the bond to which each of them was attached. That all of the coupons of the same number mature on the same date, and that the dates of their maturity are correctly set forth in finding 1.

(5) That in the year 1892 the board of directors of the defendant irrigation district entered into a contract with J. D. Hooker & Co., wherein and whereby that firm agreed to furnish to the defendant district 4,000 feet, more or less, of steel water pipe 24 inches in diameter, and that it would construct the pipe into a pipe line for the conveyance of water for the use of the irrigation district, and lay the same in trenches in the land of the defendant district; and that upon full completion of the pipe line by Hooker & Co. the irrigation district would pay to that firm $2.50 per lineal foot for each and every foot of pipe furnished, laid, and completed as aforesaid, such payments to be made as follows, to wit, one-half of the amount to be paid in gold coin of the United States, one-fourth in the bonds of the irrigation district at their par value, both of which payments to be made on the completion of the said pipe line, and the remaining one-fourth to be paid to Hooker & Co. 36 days after the completion of said pipe line in the bonds of the district at their par value. That the said Hooker & Co. duly performed all of the terms and conditions of the contract, and completed the pipe line as provided for, and delivered the same to the district; and that on the 27th day of June, 1892, the board of

directors of the district, having full knowledge of the fulfillment of the terms and conditions of the contract and the completion of the pipe line, and the delivery of the same, by resolution duly and regularly adopted declared that the said contract had been fully performed by Hooker & Co. And at the request of the district, and without waiving any of the terms and conditions of the contract, Hooker & Co. agreed to accept $5,000 in cash in lieu of one-half cash, and the balance of the amount due it, amounting to $15,642.94, in bonds of the district at their par value, as payment in full for the said pipe line so laid, delivered, and accepted; and that on the day last mentioned the defendant irrigation district, by resolution of its board of directors, after finding that the said contract had been duly performed by Hooker & Co., and that there was due it $20,642.94, directed its president and secretary to issue to the said Hooker & Co. a warrant on its treasurer for the sum of $5,000, and authorized the delivery to that firm of $15,642.94 in bonds of the district at their par value, in payment of the contract price of the said pipe line so completed, delivered, and accepted. That in pursuance of the said resolution said warrant was drawn on the treasurer of the irrigation district, and delivered to Hooker & Co., and was thereafter paid on presentation, and pursuant to the same resolution the defendant irrigation district on the 27th day of June, 1892, delivered to the firm of J. D. Hooker & Co. bonds of the district at their par value amounting to $15,642.94.

(6) That the said money and bonds were paid by the defendant irrigation district and accepted by the said J. D. Hooker & Co. in payment and fulfillment of the said contract, and that the bonds so received are those referred to in the complaint in this case, and the coupons sued upon were annexed to those bonds. That subsequent to the delivery of the said bonds, and in the latter part of the year 1892, Hooker & Co. sold and delivered, for a valuable consideration, the said bonds to C. G. Hooker, who purchased the same in good faith, and who had no knowledge of any of the alleged defects or illegalities in the bonds or coupons so purchased, except such as every purchaser of the bonds of said district is chargeable with by virtue of the law relating to said district, and thereafter, and prior to the 1st day of July, 1901, said C. G. Hooker sold and transferred, for a valuable consideration, the coupons sued upon to R. G. Hooker and C. G. Hooker, who purchased the same in good faith, and neither of whom had any knowledge of any alleged defect or illegalities in said coupons, except such as every purchaser of the bonds of said district is chargeable with by virtue of the law relating to the district; and thereafter, and prior to the 1st day of July, 1901, said R. G. and C. G. Hooker sold and delivered the said coupons sued upon, for a valuable consideration, to the plaintiff to the present action, who purchased them in good faith, and who had no knowledge of any alleged defects or illegalities in said coupons, except such as every purchaser of the bonds of the district is chargeable with by virtue of the law relating to the district. That the coupons sued upon and other interest coupons were annexed to the said bonds at the time of the issuance and delivery thereof by the defendant to the said J. D. Hooker & Co., and passed with said bonds to each subsequent purchaser thereof.

(7) That at the time the said contract between the defendant irrigation district and the said J. D. Hooker & Co. was made and at the time the said bonds were executed and delivered to the said J. D. Hooker & Co. said W. R. McCully was, and ever since has been, secretary of the board of directors of the defendant district. That J. A. Van Arsdale immediately preceded said W. R. McCully as such secretary, and during the incumbency of said J. A. Van Arsdale as such secretary the defendant district caused all of the said bonds and the coupons for interest and installments of principal attached thereto to be lithographed, and caused the name of the then secretary, the said J. A. Van Arsdale, to be lithographed on the said coupons. That no names were lithographed on said bonds otherwise than on the coupons attached thereto, but places were left for the signatures of the president and secretary to be affixed when the bonds should be delivered to a purchaser or purchasers. That after the said bonds and coupons were lithographed the said J. A. Van Arsdale died, and the said W. R. McCully succeeded him as such secretary of the defendant irrigation district.

(8) That attached to said bonds when delivered to said J. D. Hooker & Co.

were 10 installment coupons in addition to said interest coupons, which, except as to the amount of the installment payable, the number of the coupon, and the date when the same would become due and payable, were in words and figures following, to wit:

"Installment Coupon.

"$25.00. No. 1.
"East Riverside Irrigation District will pay to the bearer at the office of the treasurer of said District, in the County of San Bernardino, State of California, on the 1st day of July, 1902, on surrender of this coupon, the sum of twenty-five dollars, in U. S. gold coin, being the 1st installment of principal on bond of said District. Interest will cease after maturity.
"No. 335. J. A. Van Arsdale, Secretary.
"Dated December 30th, 1890."

That the first of said installment coupons is for the sum of $25, and is payable on the 1st day of January [July?], 1902, and the others on the 1st day of January [July?] for the following 10 years, the installments of principal increasing in the amount of $5 each year.

R. Percy Wright and William F. Humphrey, for plaintiff in error.

Henry Goodcell, F. A. Leonard, and Charles R. Gray, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The law is well settled that bona fide purchasers of municipal bonds take with notice of the law under which such bonds are issued. The plaintiff in error must therefore be held to have known of the provisions of the act called the "Wright Act" (St. Cal. 1887, pp. 35, 36, 44, c. 34), sections 15, 16, and 42 of which are as follows:

"Sec. 15. For the purpose of constructing necessary irrigating canals and works and acquiring the necessary property and rights therefor, and otherwise carrying out the provisions of this act, the board of directors of any such district must, as soon after such district has been organized as may be practicable, estimate and determine the amount of money necessary to be raised, and shall immediately thereupon call a special election, at which shall be submitted to the electors of such district possessing the qualifications prescribed by this act, the question whether or not the bonds of said district shall be issued in the amount so determined. Notice of such election must be given by posting notices in three public places in each election precinct in said district for at least twenty days, and also by publication of such notice in some newspaper published in the county, where the office of the board of directors of such district is required to be kept, once a week for at least three successive weeks. Such notices must specify the time of holding the election, the amount of bonds proposed to be issued, and said election must be held and the result thereof determined and declared, in all respects as nearly as practicable, in conformity with the provisions of this act governing the election of officers: provided, that no informalities in conducting such an election shall invalidate the same, if the election shall have been otherwise fairly conducted. At such election the ballots shall contain the words 'Bonds—Yes' or 'Bonds—No,' or words equivalent thereto. If a majority of the votes cast are 'Bonds—Yes,' the board of directors shall immediately cause bonds in said amount to be issued; said bonds shall be payable in gold coin of the United States, in installments as follows, to wit: At the expiration of eleven years not less than five per cent of said bonds; at the expiration of twelve years not less than six per cent; at the expiration of thirteen years not less than seven per cent; at the expiration of fourteen years not

less than eight per cent; at the expiration of fifteen years not less than nine per cent; at the expiration of sixteen years not less than ten per cent; at the expiration of seventeen years not less than eleven per cent; at the expiration of eighteen years not less than thirteen per cent; at the expiration of nineteen years not less than fifteen per cent; and for the twentieth year a percentage sufficient to pay off said bonds; and shall bear interest at the rate of six per cent per annum, payable semi-annually on the first day of January and July of each year. The principal and interest shall be payable at the office of the treasury of the district. Said bonds shall be each of the denomination of not less than one hundred dollars, nor more than five hundred dollars, shall be negotiable in form, signed by the president and secretary, and the seal of the board of directors shall be affixed thereto. They shall be numbered consecutively as issued, and bear date at the time of their issue. Coupons for the interest shall be attached to each bond signed by the secretary. Said bonds shall express on their face that they were issued by authority of this act, stating its title and date of approval. The secretary shall keep a record of the bonds sold, their number, the date of sale, the price received, and the name of the purchaser.

"Sec. 16. The board may sell said bonds from time to time, in such quantities as may be necessary and most advantageous, to raise money for the construction of said canals and works, the acquisition of said property and rights, and otherwise to fully carry out the objects and purposes of the act. Before making any sale the board shall, at a meeting by resolution, declare its intention to sell a specified amount of the bonds, and the day and hour and place of such sale, and shall cause such resolution to be entered in the minutes, and notice of the sale to be given, by publication thereof at least twenty days, in a daily newspaper published in each of the cities of San Francisco, Sacramento, and Los Angeles, and in any other newspaper, at their discretion. The notice shall state that sealed proposals will be received by the board, at their office, for the purchase of the bonds, till the day and hour named in the resolution. At the time appointed the board shall open the proposals, and award the purchase of the bonds to the highest responsible bidder, and may reject all bids; but said board shall in no event sell any of the said bonds for less than ninety per cent of the face value thereof."

"Sec. 42. The board of directors, or other officers of the district, shall have no power to incur, any debt or liability whatever, either by issuing bonds, or otherwise, in excess of the express provisions of this act, and any debt or liability incurred, in excess of such express provisions, shall be and remain absolutely void."

If it be conceded that certain of the foregoing statutory provisions may be regarded as merely directory, such as that "the seal of the board of directors shall be affixed" to the bonds, that they "shall be numbered consecutively as issued," and that the coupons attached to the bonds shall be "signed by the secretary," still there is no ground whatever for holding that the signatures of the officers designated by the statute, and which it declares shall be affixed to the bonds which constitute the principal obligation, are not essential to their execution. And this is not only not disputed, but is virtually admitted, in the reply brief for the plaintiff in error. At all events, the decision of the Supreme Court in the case of Anthony v. County of Jasper, 101 U. S. 693, 25 L. Ed. 1005, is conclusive upon that proposition. That was an action upon interest coupons originally attached to bonds issued under the township aid act of Missouri (Wagner's St. p. 243a, c. 22a, art. 3), section 4 of which is as follows:

"Before any bond hereafter issued by any county, city, or incorporated town, for any purpose whatever, shall obtain validity, or be negotiated, such bond shall first be presented to the State Auditor, who shall register the

same in a book or books provided for that purpose in the same manner as the state bonds are now registered, and who shall certify by indorsement on such bond that all the conditions of the laws have been complied with in its issue, if that be the case, and also that the conditions of the contract under which they were ordered to be issued have also been complied with, and the evidence of that fact shall be filed and preserved by the auditor. But such certificate shall be prima facie evidence only of the facts therein stated, and shall not preclude or prohibit any person from showing or proving the contrary in any suit or proceedings to test or determine the validity of such bonds or the power of any county court, city, or town-council, or board of trustees, or other authority to issue such bonds, and the. remedy by injunction shall also lie at the instance of any tax-payer of the respective county, city, or incorporated town to prevent the registration of any bonds alleged to be illegally issued or founded under any provision of this act."

On the 4th of June, 1872, the county court ordered that $50,000 of the bonds which had been voted should be issued, that the clerk have them registered according to law, and, when registered, that they be deposited in escrow with some responsible banker in St. Louis. John Purcell was the presiding justice of the court in March. He continued in office until September, 1872, when he resigned, and R. S. Merwin was appointed in his place October 21, 1872. The bonds there in question were sealed with the seal of the court, affixed by the clerk, and signed by Merwin, as presiding justice, and by the clerk, in October, 1872, but antedated as of March 28th. Merwin delivered them during the same month, with the first two coupons cut off, to the Union Savings Bank of St. Louis, for the use of Edward Burgess, a contractor for building the road. In November Burgess sold them to one Wilson at 55 cents on the dollar, and the bank gave them up to the purchaser on his order. Neither the other justice of the county court nor the court as a court consented to what was done by Merwin, and the railroad company never fully complied with the conditions of the vote authorizing the issue of the bonds. No registry of the bonds was ever made as required by the act of March 30, 1872, and they did not have upon them the certificate of registration. Anthony, the plaintiff below, was a purchaser for value of the bonds from which the coupons sued on were cut, and without any notice that they had been antedated, or were in any respect irregular or invalid. In affirming the judgment against Anthony the Supreme Court said:

"There can be no doubt that it is within the power of a state to prescribe the form in which municipal bonds shall be executed in order to bind the public for their payment. If not so executed, they create no legal liability. Other circumstances may exist which will give the holder of them an equitable right to recover from the municipality the money which they represent; but he cannot enforce the payment, or put them on the market as commercial paper. The act now in question is, we think, of this character. It, in effect, provides that no bond issued by counties, cities, or incorporated towns shall be valid—that is to say, completely executed—until it has been countersigned or certified in a particular way by the State Auditor. For this purpose, after being executed by the corporate authorities, it must be presented to that officer, and he must inquire and determine whether all the requirements of the law authorizing its issue have been observed, and whether all the conditions of the contract in consideration of which it was to be put out have been complied with. To enable him to do this, evidence must be submitted, which he is required to file and preserve. If he is satisfied, the registry is made, and the requisite certificate indorsed on the bonds. This be-

ing done, the execution of the bond is complete, and, under the law, it may then be negotiated; that is to say, put on the market as valid commercial paper. When the certificate is found on the bond, the purchaser need not inquire whether what has been certified to is true. As against a bona fide holder, the public is bound by what its authorized agents have done and stated in the prescribed form. Dealers in municipal bonds are charged with notice of the laws of the state granting power to make the bonds they find on the market. This we have always held. If the power exists in the municipality, the bona fide holder is protected against mere irregularities in the manner of its execution; but, if there is a want of power, no legal liability can be created. When the bonds now in question were put out, the law required that, to be valid, they must be certified to by the Auditor of State. In other words, that officer was to certify them before their execution was complete, so as to bind the public for their payment. We had occasion to consider in McGarrahan v. Mining Company, 96 U. S. 316, 24 L. Ed. 630, the effect of statutory requirements as to the form of the execution of patents to pass the title of lands out of the United States, and there say: 'Each and every one of the integral parts of the execution is essential to the validity of a patent. They are of equal importance under the law, and one cannot be dispensed with more than another. Neither is directory, but all are mandatory. The question is not what, in the absence of statutory regulations, would constitute a valid grant, but what the statute requires.' The same rule applies here. The object to be accomplished is the complete execution of a valid instrument, such as the law authorizes public officers to put out and bind for the payment of money the public organization they represent. For this purpose the law has provided that the instrument must not only be signed and sealed on behalf of the county court of the county, but it must be certified to or countersigned by the Auditor of State. Of this law all who deal in the bonds are bound to take notice. In order to recover in this case it became necessary for the plaintiff to prove that the bonds from which the coupons sued on were cut had been executed according to law. He did prove that they were signed by the presiding justice and clerk of the court, and were sealed with the seal of the court. This, before the act of March 30, 1872, would have been enough; but after that more was necessary. The public can act only through its authorized agents, and it is not bound until all who are to participate in what is to be done have performed their respective duties. The authority of a public agent depends on the law as it is when he acts. He has only such powers as are specifically granted; and he cannot bind his principal under powers that have been taken away by simply antedating his contracts. Under such circumstances a false date is equivalent to a false signature; and the public, in the absence of any ratification of its own, is no more estopped by the one than it would be by the other. After the power of an agent of a private person has been revoked, he cannot bind his principal by simply dating back what he does. A retiring partner, after due notice of dissolution, cannot charge his firm for the payment of a negotiable promissory note, even in the hands of an innocent holder, by giving it a date within the period of the existence of the partnership. Antedating under such circumstances partakes of the character of a forgery, and is always open to inquiry, no matter who relies on it. The question is one of the authority of him who attempts to bind another. Every person who deals with or through an agent assumes all the risks of a lack of authority in the agent to do what he does. Negotiable paper is no more protected against this inquiry than any other. In Bayley v. Taber, 5 Mass. 286, 4 Am. Dec. 57, it was held that, when a statute provided that promissory notes of a certain kind, made or issued after a certain day, should be utterly void, evidence was admissible on behalf of the makers to prove that the notes were issued after that day, although they bore a previous date. It matters not that when the bonds were voted the registration law was not in force. Before they were issued it had gone into effect. It did not change in any way the contract with the railroad company. The company was just as much entitled to its bonds when it complied with the conditions under which they were voted after the law as it could have been before. All the Legislature attempted to do was to provide what should be a good bond when issued.

There was nothing changed but the form of the execution. Purchasers of municipal securities must always take the risk of the genuineness of the official signatures of those who execute the paper they buy. This includes not only the genuineness of the signature itself, but the official character of him who makes it. This plaintiff is charged with notice of the fact that Merwin was not the presiding justice of the county court until October, 1872, and that he could not have signed the bonds in his official capacity until that time. Had he signed them in March, he could not have bound the township for their payment. This is equivalent to notice that they were not in fact issued before March 30th, and that, consequently, they were not valid, because not certified by the Auditor of State."

Accepting the contention of the plaintiff in error as correct, and treating the bonds to which the coupons sued upon in the present case were originally attached as having been issued the day they bear date, to wit, December 30, 1890—the day they were directed to be issued by the board of directors of the district—the difficulty in the way of sustaining them is that they were not signed by the then secretary, who was Van Arsdale. His lithographed signature was affixed to the coupons attached to the bonds, but he never signed the bonds, which, as has been said, was the principal obligation, and which the statute declares should be signed by the president and secretary of the board of directors of the district. The bonds in question were subsequently, and nearly two years after December 30, 1890, signed by McCully, as secretary, who had then succeeded Van Arsdale in that capacity; and with McCully's signature affixed to the bonds and Van Arsdale's lithographed signature affixed to the coupons attached thereto they were disposed of for value. Each bond, with the annexed coupons, constituted. but one instrument; the bond being the principal obligation and the coupons merely incidental. City of Kenosha v. Lamson, 9 Wall. 477, 19 L. Ed. 725. As was said by the court below, both Van Arsdale and McCully could not be secretary at one and the same time, and each bond therefore showed upon its face that there was something wrong about it. As said by the Supreme Court in the case of Anthony v. County of Jasper, supra:

"Purchasers of municipal securities must always take the risk of the genuineness of the official signatures of those who execute the paper they buy. This includes not only the genuineness of the signature itself, but the official character of him who makes it."

Proper inquiry by the purchaser would have disclosed to him that McCully was not the secretary of the board of directors on December 30, 1890; and therefore, treating the bonds in question as having been then issued, as is contended by the plaintiff in error should be done, they were void and of no effect, because not signed by the secretary, as required by section 15 of the Wright act. On the other hand, treating the bonds as having been issued at the time of their disposal, and when McCully was in fact secretary, they equally failed to conform to those other essential provisions of the statute declaring that they shall bear date at the time of their issue, and be payable in installments at the various times therein fixed. In that view they are antedated, the direct and necessary effect of which is to make them payable within a shorter time than is pro-

vided by the statute for their payment, which provision is, as a matter of course, of the essence of the law, and not a matter of mere form.  In either event, and in both cases, the purchaser was apprised by the face of the bond itself and the law under which it purported to be issued of its invalidity.

The judgment is affirmed.

GILBERT, Circuit Judge (dissenting).  The defects which are relied upon as rendering the bonds void are three.  That which is principally urged is that they were not issued on the day they bore date, to wit, December 30, 1890, nor for more than one year thereafter, and did not bear date as at the time of their issuance.  The statute provided as follows: "If a majority of the votes cast are 'Bonds—Yes,' the board of directors shall immediately cause bonds in such amount to be issued."  It is admitted by counsel for the defendant in error that the word "issued" is in similar statutes used in two distinct senses; and this is undoubtedly true.  Bonds are sometimes said to be issued when they are merely authorized. Again, they are said to be issued when they are actually executed and delivered for value.  The word "issued" is used in the former sense in the statute above quoted.  This is made clear by the language which follows:

"They shall be numbered as issued, and bear date at the time of their issue. * * * The board may sell said bonds from time to time in such quantities as may be necessary and most advantageous, to raise money for the construction of said canals and works, the acquisition of such property and rights, and otherwise to fully carry out the objects and purposes of the act."

It thus appears that there was no limit placed by law on the time when the bonds might be sold and delivered.  They could lawfully be sold and delivered, as they were in this case, 18. months after the time when they were authorized.  The issue of bonds referred to in the statute clearly means the authorization of the bonds, their preparation, and the date thereof from which they were to begin to run.  It is not reasonable to hold that the power to execute the bonds expired during the period in which they might be sold.  It was no violation of the statute to sign and seal them on the day when they were sold and delivered.  At that time the contract was made, but made subject to the provision that the bonds should begin to run from December 30, 1890, the date when they were authorized.  The law was therefore complied with.  The bonds were issued and dated in the sense which the statute contemplated; that is, they were lithographed and were dated December 30, 1890.  At that date, however, no obligation was assumed.  The bonds were of no more effect than blank paper until they were sold and delivered and became a binding obligation upon the district.  At that time they were signed and sealed.  They were signed by the then president and secretary of the district, the officers who alone had the authority to execute them.  The case of Coler v. Cleburne, 131 U. S. 162, 9 Sup. Ct. 720, 33 L. Ed. 146, is directly in point.  In that case the ordinance authorizing the bonds was adopted September

13, 1883. The bonds on their face purported to have been executed on January 1, 1884. They were in fact executed on July 3, 1884, and were signed by the former mayor, who was such officer on January 1, 1884, but whose term had expired before July 3, 1884. Mr. Justice Blatchford, speaking for the court, said of those bonds, "They could not be issued until they were properly signed by a person who was the mayor at the time they were signed," and the bonds were held void, for the reason that they were not signed by the mayor who held that office on the date when they were actually executed. There are numerous cases holding that bonds executed at a date subsequent to the time when they are authorized may be executed by the officers who are at that time the proper officers to execute the same, and may be antedated as of the time when they were authorized to be issued. In the case of Marion County v. Clark, 94 U. S. 278, 24 L. Ed. 59, the court sustained bonds which bore date of September 3, 1872, but were not executed and delivered until November 4th following. In Morrill v. Smith County (Tex. Civ. App.) 33 S. W. 899, the right to issue the bonds became fixed on May 13, 1873. They were not executed until October 2, 1873. The court said:

"The right to have the bonds issued having become perfect on May 13th, we do not think it affects their validity to have antedated them after that date, or to have them run to maturity in twenty years after that time."

In State v. Moore, 46 Neb. 590, 65 N. W. 193, 50 Am. St. Rep. 626, the proposition submitted to the electors was the issuance of bonds to be dated January 2, 1895, and to run for 20 years from the date thereof. The bonds bore date January 2, 1895, but they were not executed until April, 1895. It was held that the fact that they were so antedated did not invalidate them. In Yesler v. Seattle, 1 Wash. 308, 25 Pac. 1014, the statute required that the bonds "bear the date of their issue," to run for 20 years. The bonds were prepared as of the date July 1, 1890. They were not delivered for many months thereafter. The court said:

" 'Date of issue,' when applied to notes, bonds, etc., of a series, ordinarily means the arbitrary date fixed as the beginning of the term for which they run, without reference to the precise time when convenience or the state of the market may permit of their sale or delivery. * * * It was a fair contract. There can be no wrong done if the term of some of the bonds in the hands of the purchasers is something less than twenty years."

In Syracuse Township v. Rollins, 104 Fed. 958, 44 C. C. A. 277, the authorized bonds were to run 10 years. They bore date June 1, 1887. They were executed July 20, 1887, and made payable July 1, 1897. The court said of these bonds:

"They matured in a little less than ten years from the date of their issue, which is the date from which to compute the time they had to run. They became binding obligations on the township from the date of the issue only."

In Town Council of Lexington v. Union National Bank (Miss.) 22 South. 291, the legislative act authorized the city of Lexington to issue 20-year bonds to bear date May 1, 1884. The court said:

"The bonds were lithographed as of date May 1, 1884, according to the terms of the act. But, not being delivered until November 7, 1884, the offi-

cers issuing them inserted the true date, which in no way affected the obligations of Lexington, the rights of any party, nor in any way violated the spirit or direction of the act."

In Town of Solon v. Williamsburgh, 35 Hun, 1, the town commissioners were authorized to deliver bonds from time to time, as might be agreed upon between them, to the railroad company. The bonds were issued and dated September 1, 1870, and made payable 30 years from that date. Some were not delivered until two years thereafter. The court said:

"It was not intended that they should be dated at the time of their delivery. Such a construction would require the bonds to be payable at different dates."

The case of Anthony v. County of Jasper, 101 U. S. 693, 25 L. Ed. 1005, cited by the defendant in error as authority against the construction of the act contended for by the plaintiff in error, is, I submit, an authority in its support. In that case it appeared that it was ordered on June 4, 1872, that bonds should issue. In October, 1872, the bonds were issued and signed, but they were dated back as of March 28, 1872. The court said:

"In order to recover in this case, it became necessary for the plaintiff to prove that the bonds from which the coupons sued on were cut had been executed according to law. He did prove that they were signed by the presiding justice and clerk of the court, and were sealed with the seal of the court. This, before the act of March 30, 1872, would have been enough, but after that more was necessary."

And the court held that the bonds were void for the reason that they were antedated for the purpose of avoiding the act of March 30, 1872, which required their certification by the State Auditor. But the clear intimation of the decision is that, if there had been no wrongful purpose in antedating the bonds, they would have been held valid, for the court said of the method of their execution and the antedating, "This, before the act of March 30, 1872, would have been enough."

Again, it is said that the bonds are void for the reason that the first installment of the principal of each bond is to be paid January 1, 1902, and each succeeding installment on January 1st of each succeeding year, and thereby the time of payment is extended from the date of the bonds, which was December 3, 1890, in excess of the time provided by the statute. The contention is, in other words, that, because the bonds were payable in 30 years and 2 days from their date, they are void. Such a contention is directly against the uniform current of authority. In Township of Rock Creek v. Strong, 96 U. S. 271, 24 L. Ed. 815, the act authorized the issuance of bonds payable in not less than 5 nor more than 30 years. The bonds issued were dated September 10, 1872, and were made payable 30 years from October 17, 1872. The court said, "They were thus practically thirty-year bonds." In Dows v. Town of Elmwood (C. C.) 34 Fed. 114, the bonds were dated April 27, 1869, and were issued and delivered on that day. By their terms they ran 30 years from July 1, 1869, and drew interest from that date. The court held that they were issued in substantial com-

pliance with the law, which declared that they should run for 20 years. In South St. Paul v. Lamprecht Bros. Co., 88 Fed. 449, 31 C. C. A. 585, it was urged that the bonds in question did not mature for more than 30 years after they were executed. The court said:

"The fact is, however, that the bonds did not begin to bear interest until June 1, 1894, and they were payable on that day thirty years after. This was a substantial compliance with the law."

In that case the bonds were executed on May 29, 1891. Substantially to the same effect are the cases of Flagg et al. v. City of Palmyra, 33 Mo. 440, and Board of Commissioners v. Vandriss, 115 Fed. 866, 53 C. C. A. 192. The bonds in the present case, it may be observed, do not call for the payment of interest for any period whatever in excess of 30 years.

The third defense is that each of the installment coupons and interest coupons bore the lithographed signature of J. A. Van Arsdale, secretary, and were not otherwise signed, and that at the time of the execution of the bonds on June 27, 1892, said Van Arsdale was not the secretary of the defendant in error. As to the installment coupons, it is a sufficient answer to this objection to say that the statute did not authorize or contemplate the execution of such coupons, and the fact that they were issued cannot in any way affect the questions involved on the present hearing. As to the interest coupons, the statute provided as follows: "Coupons for the interest shall be attached to each bond, signed by the secretary." The bonds themselves contain all the terms of the contract, including a specification of the rate of interest and the times of the payment thereof. The purpose of attaching interest coupons is thus stated in City of Kenosha v. Lamson, 9 Wall. 477, 19 L. Ed. 725:

"The coupon is not an independent instrument, like a promissory note for a sum of money, but is given for interest thereafter to become due upon the bond, which interest is parcel of the bond, and partakes of its nature. * * * The coupon is simply a mode agreed upon between the parties for the convenience of the holder in collecting the interest as it becomes due."

In Blair v. Cumming County, 111 U. S. 363, 368, 4 Sup. Ct. 449, 452, 28 L. Ed. 457, the court said:

"It was not necessary that all the commissioners should sign the bonds. What was done was not an issuing of the bonds by the chairman and clerk. The coupons, in the form in which they were issued, annexed to the bond, were adopted as coupons by the statement in the body of the bond; and the question as to any one of them, when detached, is only one of genuineness and identity."

In McCoy v. Washington County, 3 Wall. Jr. 381, Fed. Cas. No. 8,731, Mr. Justice Grier said:

"If the commissioners had power to bind the county for the payment of the principal and interest of a bond transferable by delivery, the coupons which are appended to them are the appointed evidence of the agreement of the parties, to show who is entitled, as holder of the bond, to receive the interest due at a particular date. They are attached to the bonds for the convenience of the officers of the county, and to facilitate their negotiation, and thereby add to their commercial value. The obligation to pay the interest is to be found in the bond, not in the coupon."

In Thayer v. Montgomery County, 3 Dill. 389, Fed. Cas. No. 13,-870, Miller, Circuit Justice, said:

"The bond itself being duly signed by the officers of the county, and the coupons being part of the bond, it is no defense to the coupons that they are not signed by the chairman of the board as well as by the clerk."

Of similar import is Phelps v. Town of Lewiston, 15 Blatchf. 131, Fed. Cas. No. 11,076. Taking it to be true, then, as stated in these decisions, that the obligation of the defendant in error is to be found in the bonds, and that the question of the signatures to the coupons is only one of "genuineness and identity," it would seem that no difficulty should be encountered in reaching the conclusion that the lithographed signature of J. A. Van Arsdale, secretary, having been adopted by the officers who executed the bonds at the time when they were delivered, constitutes a sufficient compliance with the directory provision of the statute that the coupons be signed by the secretary. In Weyauwega v. Ayling, 99 U. S. 112, 25 L. Ed. 470, bonds bearing date June 1st, and purporting to be signed by the chairman of the board of supervisors and by the town clerk, were shown not to have been signed by the person signing as town clerk until July 13th, at which time he had ceased to be clerk. The court held the bonds good, on the presumption that they had been delivered with the consent of the clerk then in office. If that presumption could avail in aid of the execution of bonds, it certainly should apply to the execution of coupons, which are but an incident to the bonds.

I submit that the judgment of the Circuit Court should be reversed.